**People of the State of Illinois, Plaintiff-Appellee, v. Edward L. Flowers, Defendant-Appellant.**

**Gen. No. 51,808.**

First District, First Division.

September 16, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (John J. Van Zeyl and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard A. Rinella, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendant, Edward L. Flowers, was charged in a two-count indictment with having committed the crimes of rape and indecent liberties with a child. Upon his waiver of a jury trial, he was tried and found guilty of both charges, and judgment was entered upon said finding. Sentence was imposed only on the rape conviction for a term of from two (2) to eight (8) years in the State Penitentiary. Defendant appeals from the judgment entered on the finding of guilty.

On appeal the defendant contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt of the offenses charged in the indictment, and also that the sentence imposed by the trial judge was excessive.

The complaining witness, Brenda Matthews, who was thirteen years of age at the time of the incident, testified that she was returning home from a visit with some girl friends at around 4:30 p. m. on March 24, 1966. As she was crossing a bridge between 25th and 26th Streets on State Street, the defendant, whom she had never seen before, came up behind her. He called her by name and grabbed her by the arm. He asked Brenda to go with him. When she refused, he hit her in the mouth, knocking her to the sidewalk. Brenda then spotted her father entering her apartment building. She called out to him, but he didn't hear her and entered the building. She started to run. The defendant stopped her by hitting her twice in the mouth. According to the complaining witness, the defendant then forced her to accompany him to the lobby of a building at 2350 South State Street. She stood in a corner of the lobby and the defendant talked to her for about a minute. At this point, a girl named Dorothy Albert, entered the building. She talked to the defendant for a moment and left.

The defendant then forced Brenda to go with him to a building located at 44 West 24th Street by hitting her in the face and twisting her arm. The defendant shoved her up the stairs to a third-floor landing where he ripped off her panties and had intercourse with her. Brenda further testified that after the defendant began to push her up the stairs she began to scream. When the defendant finished he told Brenda that ". . . if I told anyone what had happened, that Chico and other boys was going to give my mother, the same thing to her that they did to me."

The complaining witness testified that when she got home that evening her knees were scraped and her face was swollen. She told her mother that she had received the injuries in escaping from a man who had chased her. She was afraid to tell her mother the truth because of the threats made by the defendant. However, when her mother came to see her at school the following day she told her the truth about what had occurred. Brenda next saw the defendant on March 27th, at the police station. At that time, in the presence of Brenda, her mother, Detective Albertson and several other policemen, she said the defendant first stated that he hadn't raped her. He then stated, however, that Brenda had been willing to give in at the beginning, but then she had started to resist. "He said he had to rough me up."

Brenda's mother, Mattie Matthews, testified that when her daughter came home at about 7:00 p. m., on March 24th, she was hysterical and she had bruises on her mouth, legs and knees. Mrs. Matthews further testified that her daughter told her that she had been chased by a man. The following morning Mrs. Matthews found blood spots on the sheets of her daughter's bed, and she also found blood on Brenda's panties. The same day she went to Brenda's school where her daughter related what happened. According to Mrs. Matthews, she saw the defendant for the first time at the police station on March 27th. She heard him tell Detective Albertson

that he didn't know Brenda and that he had asked her to go with him; the defendant stated further that while Brenda was agreeable at first, she subsequently changed her mind, and "he had to rough her up and take it."

Detective Merle Albertson testified that while he was interrogating the defendant, the latter individual first told him that he had engaged in intercourse with the complaining witness on the day in question, and on several occasions prior thereto, but that he had always done so with Brenda's consent. However, after Albertson confronted the defendant with the fact that Brenda had been bruised, he changed his story. He told Albertson that Brenda had at first wanted to do it and had changed her mind, "and he had to beat her up and take it."

Dorothy Albert, a witness called on behalf of the State, testified on direct examination that she saw the defendant and the complaining witness standing together in the lobby of the building at 2350 South State Street. On cross-examination the witness stated that she first saw the defendant standing alone on her way to the grocery store, and that when she returned from the store she noticed Brenda standing in a corner of the lobby.

The defendant, who was seventeen at the time of the trial, took the stand in his own behalf and testified that he met Brenda on March 24, 1966, when she was standing in the lobby at 2350 South State Street. He further testified that he had engaged in sexual intercourse with Brenda prior to March 24th; and that on the latter date, on the third-floor landing of the stairway at 44 West 24th Street, he had intimate relations with her again. The defendant denied that he had at any time exerted force upon Brenda; and he stated that the act of intercourse on March 24th took place with her consent. The defendant explained the bruises on Brenda's mouth and legs by testifying that he broke a bottle against the wall in the 2350 building and the flying glass had injured the

293

complaining witness. He denied telling Detective Albertson that he had "roughed up" Brenda to compel her to engage in sexual intercourse with him.

 The defendant contends that he was not proved guilty of rape beyond a reasonable doubt in that the complaining witness was not credible and the evidence introduced did not establish the necessary degree of force. A conviction for rape can only be sustained if the victim's will to resist has been overborne, and satisfactory evidence must be introduced to demonstrate that the act was against her will. People v. Jeanor, 23 Ill2d 347, 178 NE2d 384; People v. Elder, 25 Ill2d 612, 186 NE2d 27. Whether the victim's will has indeed been overborne depends on the facts of each particular case. People v. Smith, 32 Ill2d 88, 203 NE2d 879. In the case at bar, three witnesses for the State testified that the defendant stated that he had to "rough up" the complaining witness to achieve carnal knowledge of her. Furthermore, Brenda's testimony, corroborated by that of her mother, tended to show that she had been threatened and beaten by the defendant. Under these circumstances we cannot say, as we must to reverse, that the proof of defendant's exercise of force over his victim was so unsatisfactory as to justify a reasonable doubt of his guilt.

██ Defendant argues that the testimony of the complaining witness was inconsistent and incredible. "Obviously the testimony of the defendant as to what happened is more consistent and more credible than the testimony of the prosecuting witness." Suffice it to say, in answer to this argument of defendant, that even if we differed with the trial judge in his determination of the credibility of witnesses we would not substitute our own judgment for his, for he is in a far better position to make such a determination than we are. People v. Woods, 28 Ill2d 582, 187 NE2d 692.

■ The defendant next contends that he was not proved guilty beyond a reasonable doubt of the crime of indecent liberties with a child. We find no merit in this contention. Brenda and her mother both testified that the defendant's identity was unknown to them prior to the act in question. Under these circumstances, the trial judge, who was also able to observe the complaining witness' physical appearance, was clearly justified in concluding that the defendant did not reasonably believe Brenda was sixteen years of age or older at the time he compelled her to engage in sexual relations.

■■ Finally, the defendant contends that pursuant to our power to reduce sentence (Supreme Court Rule 615(b)(4)), (Ill Rev Stats 1967, c 110A, § 615) we should reduce his sentence which he claims was excessive in light of all of the surrounding circumstances of the occurrence. The sentence imposed on the rape conviction was within the statutory limits fixed by the legislature. We will not interfere with the trial judge's discretion in fixing sentence unless the sentence imposed is manifestly excessive. People v. Hobbs, 56 Ill App2d 93, 205 NE2d 503. We do not believe that such a situation is presented by the case at bar. The evidence reveals that the complaining witness was beaten and threatened by the defendant in conjunction with his sexual attack upon her person. Under these circumstances we see no reason to reduce the sentence.

The judgment of the Criminal Court is therefore affirmed.

Affirmed.

ADESKO and MURPHY, JJ., concur.