*In re* WILLIAM DARCY—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* WILLIAM DARCY, Respondent-Appellant).

(No. 59170;

First District (4th Division)—April 10, 1974.

Douglas I. Milan and Paul E. Flaherty, both of Chicago (Gann, McIntosh, Flaherty & Parker, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and John M. Cutrone, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The defendant, Darcy, was convicted and adjudicated a delinquent for violating section 11—3 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, sec. 11—3), to-wit:

"Any person of the age of 14 years and upwards who, by force

or threat of force, compels any other person to perform or submit to any act of deviate sexual conduct commits deviate sexual assault."

In the instant case, the State charges that on June 24, 1972, the defendant, by threat of force, compelled Anthony Quinlan to submit to a deviate sexual act.

The sole issue presented for review is whether the evidence established beyond a reasonable doubt that the alleged victim submitted to such an act because of the threat of force from the defendant.

■■ In *People v. Bruno* (1969), 110 Ill.App.2d 219, 231, 249 N.E.2d 252, this court noted that the Committee Comments to section 11—3 state: "The phrase used in section 11—3 is intended to state generally the equivalent of the force requirement in rape." The court decided that, since the evidence of force was insufficient to convict under section 11—1 (rape), the evidence would not sustain a conviction under section 11—3 (deviate sexual assault).

■■ The Illinois Supreme Court, in *People v. Taylor* (1971), 48 Ill.2d 91, 98, 268 N.E.2d 865, 868, reiterated the force requirements for conviction under the rape statute:

> "As summarized in *People v. Faulisi*, 25 Ill.2d 457, we have held that reviewing courts are especially charged with the duty of carefully examining the evidence in rape cases, and it is the duty of the reviewing court not only to consider the evidence carefully but to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and to create an abiding conviction that he is guilty of the crime charged. We stated further that the degree of force exerted by the defendant and the amount of resistance on the part of the complaining witness are matters that depend upon the facts of the particular case; that resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female as where the assailant is armed with a deadly weapon, and that proof of physical force is unnecessary if the prosecuting witness was paralyzed by fear or overcome by superior strength of her attacker; that it is, however, fundamental that in order to prove the charge of forcible rape there must be evidence to show that the act was committed by force and against the will of the female, and if she has the use of her faculties and physical powers, the evidence must show such resistance as will demonstrate that the act was against her will."

Illinois courts have consistently applied these force requirements in reviewing rape convictions. *People v. Qualls* (1961), 21 Ill.2d 252, 171

N.E.2d 612; *People v. Elder* (1962), 25 Ill.2d 612, 186 N.E.2d 27; *People v. DeFrates* (1965), 33 Ill.2d 190, 210 N.E.2d 467; *People v. Flowers* (1968), 98 Ill.App.2d 289, 240 N.E.2d 761; *People v. Bruno* (1969), 110 Ill.App.2d 219, 249 N.E.2d 252.

The sole evidence of physical contact and threats by the defendant towards the prosecuting witness was Quinlan's testimony that, in front of the St. Thomas of Canterbury Church on a Saturday afternoon, in the presence of a lot of people, "He [Darcy] took me and pushed me around some; he hit me and told me if I don't do it [go to a homosexual's house], he would beat me up; he struck me in the chest and on the arm."

Quinlan then walked 2½ blocks from the corner of Kenmore and Lawrence to Sheridan, south on Sheridan to Lakeside, and then east to 820 West Lakeside, the residence of Chuck Mavacheck. Quinlan's entire route was heavily trafficked with both pedestrians and cars, but he neither cried out for help nor attempted to escape.

The State relied upon the alleged threats and physical exertion to demonstrate that Quinlan was paralyzed with fear of Darcy. This threat and shove, they argue, account for Quinlan's failure to yell for help to the many passersby during the 2½-block walk from the church to 820 West Lakeside. In *People v. Faulisi* (1962), 25 Ill.2d 457, 185 N.E.2d 211, the Supreme Court held that the victim's failure to cry for help when an occupied apartment was downstairs dictated reversal.

Where the victim willingly walked with the defendant 7 blocks and then, after being threatened by the defendant with a knife, rode an additional 23 blocks to his apartment and failed to cry out for help or attempt to escape, such action was said to negate the use of force by the defendant and to imply consent. *People v. Qualls* (1961), 21 Ill.2d 252, 171 N.E.2d 612. See also *People v. Adams* (1969), 115 Ill.App.2d 360, 253 N.E.2d 23.

Quinlan admitted on re-direct examination that he was not paralyzed by fear but went to Chuck Mavacheck's voluntarily. Concerning his failure to cry for help to the many passersby, Quinlan responded: "I didn't see no reason to." When asked, "Had you agreed to go with him to this apartment on 820 West Lakeside?", Quinlan responded "Yes." He agreed, by his own words, to get money from the homosexual by submitting to a deviate act. Moreover, the evidence showed that he had visited the apartment before and knew the occupant.

The State established two previous incidents and two subsequent contacts by the complaining witness with homosexuals and voluntary submission to deviate sexual acts. The first occurrence, in early June, 1972, was a visit to Robert Olsen's apartment for the purpose of getting money by submitting to a deviate act. Quinlan admitted that he went alone

and without physical coercion. During the second week in June, 1972, at the alleged direction of Bill Darcy, Quinlan went to an Orval Frank's apartment for the same purpose. Again Quinlan went alone and without physical coercion, and after receiving $5, he allegedly turned it over to Bill Darcy. These facts suggest that Quinlan frequented the homosexuals of his own volition and needed no coercion from Bill Darcy to do so.

Quinlan testified to two incidents after June 24, 1972. During the first week of July, at the alleged instance of Bill Darcy, Quinlan alone visited two homosexuals. In return for his "submission" to a deviate act, Quinlan received $5 which he gave to Bill Darcy. The final occurrence happened during the third week in July, just before Quinlan left home and joined a carnival. Quinlan went back to Robert Olsen's apartment, again alone, and again submitted to a deviate sexual act and received $5.

■■ These incidents, in our opinion, show that the complaining witness was not compelled by force or threat of force to submit to deviate sexual conduct. Under the circumstance of the instant case and for the reasons hereinabove stated, we conclude that defendant was not proved guilty of a deviate sexual assault.

The judgment of the circuit is reversed.

Reversed.

BURMAN and DIERINGER, JJ., concur.