THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ALFREDO CASTRO, Defendant-Appellant.

First District (2nd Division)   No. 81—1783

Opinion filed March 15, 1983.

Katz, Hirsch, Wise & Colky, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Raymond Brogan, and Thomas Wood Flynn, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:
A jury found defendant, Alfredo Castro, guilty of aggravated kidnaping and attempted deviate sexual assault of Anthony Sasso, a severely retarded 16-year-old boy. Castro appeals, raising as issues whether: (1) the circuit court properly allowed the State to add and strike certain allegations and correct a citation in the information brought against him; (2) the State proved that he had secretly confined Anthony against his will and forced him to submit to an act of deviate sexual intercourse; (3) testimony concerning Anthony's I.Q. and social maturity test scores was admissible; and (4) the court committed reversible error when it informed the jury that the confinement of a child under 13 years of age is presumed to be against his will if his parents have not consented to that confinement.

At trial, Anthony's sister, Rose Marie Sasso, testified that she and her family lived in the 2700 block of west 18th Street, Chicago, on October 30, 1980. At 7:30 p.m. Anthony went to a grocery store nearby where he would go often to perform chores in return for candy or soda. When Anthony did not return home by 8 p.m., the time the

store closed, Rose went looking for him, could not find him, and told her mother, Gloria Ortiz, what had happened.

Ortiz testified that after looking for Anthony for almost an hour she called the police. Ortiz described Anthony to investigating police, who communicated this description over the police radio. She and the officers then drove around, unsuccessfully searching for Anthony. Investigating officer Alberta Raymond testified similarly to Ortiz.

Officer Kenneth Maduzia testified that at 10:30 p.m. he and his partner, James Henderson, were on routine patrol. They noticed a late model Chevrolet pickup truck, with a camper on the back, parked within one block of Anthony's home. It was rocking back and forth. Looking into the back of the truck, they saw Castro roll off Anthony's back. Anthony was lying face down in the camper; his clothes were in disarray; his pants and underpants down around his ankles, and his hair messed up. Castro's pants and underpants were also down around his ankles. Castro's penis was erect.[1]

The police notified Ortiz and took Anthony to Mt. Sinai Hospital. The parties stipulated that Dr. Kim, a resident, examined him and observed that there was no tearing, trauma, or bleeding in or around Anthony's anus. He found no sperm on either Anthony's or Castro's underwear. The parties also stipulated that Castro was age 44.

Dr. Traute Page testified for the State. She is a medical doctor and was director of the Esperanzo School for the mentally retarded since 1972, which school Anthony had attended since age 6. The school held a total enrollment of 76 students. Anthony's I.Q. was 30; a normal I.Q. is between 90 and 100. Anthony's Vinland Social Maturity Test scale indicated a mental ability of age 7, yet Anthony could not write his name, tell time, or wash or dress himself without help. He could not speak in complete sentences and had difficulty answering even very simple questions. He is a very trusting and affectionate child.

Castro neither testified nor called any witnesses. When the State rested, he moved for a directed verdict on both counts. Count I had charged Castro with the offense of "attempt, in that he, [sic] attempted by force and threat of force, to compel Anthony Sasso to submit to an act of deviate sexual conduct, to wit: anal intercourse, in violation of Chapter 38, Section 11—3 Illinois Revised Statutes ***." The court granted the State's subsequent motions to strike the words "and threat of force" and to amend count I to charge Castro with violating of section 8—4 of the Criminal Code of 1961 (defining attempt)

---

[1]Officer Henderson's testimony was essentially the same as Maduzia's .

rather than section 11—3 of the Code (defining deviate sexual assault).

■ Castro contends that the words stricken constituted a material element of the offense for which he was charged and were not an unnecessary allegation in light of the conjunctive phraseology used. The State characterizes the words as mere surplusage and argues that the language of the statute rather than the words used in the information determine whether an allegation is essential or not. Less specificity is required in charging elements of an inchoate, rather than completed, offense. (*People v. Williams* (1972), 52 Ill. 2d 455, 461, 288 N.E.2d 406.) Further, in light of the evidence adduced at trial and the fact the State only had to show that Castro either used or threatened to use force, the words "and threat of force" were unnecessary and properly stricken. (See *People v. Simon* (1981), 101 Ill. App. 3d 89, 427 N.E.2d 843; *People v. Tuczynski* (1978), 62 Ill. App. 3d 644, 378 N.E.2d 1200; and *People v. Adams* (1977), 45 Ill. App. 3d 334, 359 N.E.2d 840.) Moreover, misciting the applicable statutory provision in an indictment is a formal rather than a substantive defect, which may be corrected at any time. See section 111—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 111—5), and *People v. Boyd* (1980), 87 Ill. App. 3d 978, 981, 409 N.E.2d 392.

■ The State amended count II shortly before trial, adding the words "and did secretly confine said Anthony Sasso," the information thereby charging Castro with the offense of aggravated kidnaping in that "he knowingly by force and threat of the imminent use of force carried Anthony Sasso from one place to another with the intent to secretly confine him against his will and did secretly confine said Anthony Sasso and attempted to commit a felony, to wit: deviate sexual assault upon him, in violation of Chapter 38, Section 10—2(a)(3) Illinois Revised Statutes ***." Castro contends that the circuit court should not have permitted this amendment on the eve of trial, but cites no authority in support of his argument. "An indictment *** may be amended *** *at any time* because of formal defects ***" (emphasis added) (Ill. Rev. Stat. 1979, ch. 38, par. 111—5), particularly where, as here, the insertion of the words did not change the substance of the charge. The amendment does not appear to have affected Castro's strategy at trial or the jury's verdict. This objection is without merit.

■ After Castro moved for a directed verdict, the circuit court granted the State's motion to strike the words "and threat of the imminent use of force carried Anthony Sasso from one place to an-

other." As a result, count II actually charged Castro with violating section 10—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 10—1(a)(1)), rather than section 10—1(a)(2) of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 10—1(a)(2)). Castro contends that these subsections define separate and distinct offenses and that he was therefore convicted of an offense other than the one for which he was charged. Section 10—1 defines but one offense, kidnaping. Subsections 10—1(a)(1), (2) and (3) simply define three different ways that the crime may be committed. See *People v. Allen* (1974), 56 Ill. 2d 536, 309 N.E.2d 544, *cert. denied* (1974), 419 U.S. 865, 42 L. Ed. 2d 102, 95 S. Ct. 120, where the court rejected a similar argument related to murder; see also *People v. Hadley* (1974), 20 Ill. App. 3d 1072, 314 N.E.2d 3.

■ Castro next contends that the State failed to prove that he secretly confined Anthony against his will or that he forced him to submit to an act of deviate sexual intercourse. The jury here had the right to consider the difference in the ages of Castro, 44, and the victim, 16. The evidence showed that the victim was severely retarded, with a mental age of 7. Officers Maduzia and Henderson testified that: they found Castro lying on top of Anthony with his penis erect; both of them still had their pants partially on; their clothes were in disarray; and Anthony's hair was disheveled. They also testified that what had drawn their attention to the truck in the first place was the fact that it was rocking back and forth. From these facts a jury could have concluded that Anthony was struggling to prevent Castro from having intercourse with him and to extricate himself from the situation. (See *People v. Zeiger* (1981), 100 Ill. App. 3d 515, 426 N.E.2d 1229.) The State may prove its case by circumstantial as well as direct evidence and a jury or other factfinder may draw all reasonable inferences from that evidence. (*Ohio Building Safety Vault Co. v. Industrial Board* (1917), 277 Ill. 96, 102-03, 115 N.E. 149; *Conreaux v. Industrial Com.* (1933), 354 Ill. 456, 463, 188 N.E. 457.) It is not the function of a reviewing court to substitute its judgment for that of the jury upon controverted questions of fact. (*Geraghty v. Burr Oak Lanes, Inc.* (1955), 5 Ill. 2d 153, 163, 125 N.E.2d 47; *Trauscht v. Gunkel* (1978), 58 Ill. App. 3d 509, 374 N.E.2d 843.) We find no error.

■ Castro next argues that Page's testimony concerning Anthony's I.Q. and social maturity test scores was incompetent, irrelevant, repetitive, unduly prejudicial and hearsay because it was based upon scientific determinations made by another person. Page was a doctor. She had known Anthony for nine years. The State was required to prove that Anthony had not voluntarily gone with Castro to

his truck or agreed to have intercourse with him there. The essence of Page's testimony called into question Anthony's capacity to have consented to either act because he was severely retarded. Dr. Page's testimony was both competent and relevant, therefore. With regard to Castro's hearsay objection, it appears to be well-settled law that experts may consider not only medical and psychological records commonly relied upon by members of their profession in forming their opinions (*People v. Ward* (1975), 61 Ill. 2d 559, 338 N.E.2d 171), but may testify as to the contents of these records as well. *People v. Rhoads* (1979), 73 Ill. App. 3d 288, 391 N.E.2d 512; *In re Germich* (1981), 103 Ill. App. 3d 626, 431 N.E.2d 1092; and *Kinsey v. Kolber* (1982), 103 Ill. App. 3d 933, 431 N.E.2d 1316.

Lastly, Castro argues that the court committed reversible error when it read to the jury Illinois Pattern Jury Instruction, Criminal, No. 8.03 (2d ed. 1981). That instruction is based upon section 10—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 10—1(b)), which reads: "Confinement of a child under the age of 13 years is against his will within the meaning of this Section if such confinement is without the consent of his parent or legal guardian." Castro contends that the court had no legal or factual basis upon which to tender this instruction because Anthony was 16 years of age when the events described occurred. He contends that the legislature could only have meant physical as opposed to mental age when it used the word "age" in the above-cited statutory provision. The State maintains that section 10—1(b) should be construed to refer to either mental or physical age.

The question appears to be one of first impression in this State. There is neither any record of the legislative debates concerning section 10—1(b), nor committee comments. We are left to surmise what the legislature meant by the words "13 years of age." As used in the law of rape, to which deviate sexual assault cases refer in determining force or want of consent (see, *e.g., In re Darcy* (1974), 18 Ill. App. 3d 1068, 1069-70, 311 N.E.2d 353), will or consent contemplates an exercise of intelligence based on knowledge of its significance and moral quality and there must be a choice between resistance and assent. (See Black's Law Dictionary 276 (5th ed. 1979).) Manifestly, when the legislature adopted section 10—1(b) it did not believe an average child under 13 years of age could exercise that intelligence based on knowledge of its significance and moral quality with respect to confinement of this type. Patently, a mentally retarded child who lacks both the intelligence and social maturity of a normal 7-year-old is in no better position to exercise his will or consent to be-

ing taken from one place to another or to taking part in an act of deviate sexual intercourse, irrespective of his chronological age. We conclude that the instruction was properly given.

Castro contends that the circuit court committed reversible error when it read the challenged instruction to the jury because in doing so, the court needlessly highlighted Dr. Page's testimony concerning Anthony's I.Q. and social maturity test score, which he argues were inadmissible and prejudicial. Since we have concluded that Dr. Page's testimony was admissible, we find no merit in this latter argument.

For the foregoing reasons, we find no reason to disturb defendant's convictions for aggravated kidnaping and attempted deviate sexual assault.

Affirmed.

DOWNING, P.J., and PERLIN, J., concur.