THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM F. McBRIEN, Defendant-Appellant.

Fourth District   No. 4—85—0540

Opinion filed June 3, 1986.

490

Daniel D. Yuhas and Allen H. Andrews, both of State Appellate Defender's Office, of Springfield, for appellant.

Edmond H. Rees, State's Attorney, of Carlinville (Kenneth R. Boyle, Robert J. Biderman, and Kevin T. McClain, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MORTHLAND delivered the opinion of the court:

Defendant was charged by information with one count of aggravated battery, one count of criminal trespass to a residence, and two counts of unlawful use of weapons. These charges arose out of an incident where the defendant entered a vacant house, refused to come out at the request of police, sprayed an officer with mace, allegedly fired a gun, and was later found inside in possession of certain firearms. After a competency hearing held May 21, 1985, a jury found the defendant unfit to stand trial. The jury also found there was no substantial probability that the defendant would attain fitness within one year even if provided with a course of treatment.

The defendant thereupon filed a motion for a discharge hearing as provided for under sections 104—23 and 104—25 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1983, ch. 38, pars. 104—23, 104—25). The circuit court of Macoupin County, upon hearing the evidence at the July 10, 1985, hearing, acquitted defendant of two of the counts against him. However, because the court believed there existed sufficient grounds for finding the defendant guilty of the remaining two counts, it denied acquittal as to count I (aggravated battery) and count IV (unlawful use of weapons). Defendant was then remanded to the custody of the Department of Mental Health and Developmental Disabilities, with the treatment period set at 15 months. He appeals, contending that the trial court erred in not ordering acquittal of all four counts in the information.

Initially, we note the Code provides that the defendant is properly able to appeal from what is in essence an order of nonacquittal after a discharge hearing. (Ill. Rev. Stat. 1983, ch. 38, par. 104—25(f).) We pause to consider those sections of the Code setting out the procedures and findings surrounding discharge hearings, a discussion of some merit when considering the substantive issues raised.

Article 104 of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 104—10 et seq.) sets out a comprehensive scheme for criminal defendants found

unfit to stand trial. One of the primary objectives in enacting these provisions was to ensure that criminal defendants who are found unfit, and for whom there is no substantial possibility of attaining fitness, will not be indeterminately institutionalized. *People v. Raseaitis* (1984), 126 Ill. App. 3d 600, 605, 467 N.E.2d 1098, 1102; Report, Governor's Commission for Revision of the Mental Health Code of Illinois of 1976 (1976).

The principal vehicle for achieving this objective is a "discharge hearing." A defendant may move for such a hearing pursuant to section 104—25 upon a finding that there is no substantial probability of his attaining fitness within one year. (Ill. Rev. Stat. 1983, ch. 38, par. 104—23(a).) In other instances, a hearing may be called where a defendant remains unfit one year after the initial finding of unfitness, or when it is determined that the defendant will not attain fitness within that one-year period. Ill. Rev. Stat. 1983, ch. 38, par. 104—23(b).

The details of a discharge hearing are set forth under section 104—25. Any such hearing is to be conducted by the court sitting without a jury. The purpose of a discharge hearing is "to determine the sufficiency of the evidence" of the defendant's guilt of the crimes with which he is charged. (Ill. Rev. Stat. 1983, ch. 38, par. 104—25(a).) If the evidence presented by the State fails to prove the defendant's guilt beyond a reasonable doubt, or if he is found not guilty by reason of insanity, the court "shall" order a judgment of acquittal. (Ill. Rev. Stat. 1983, ch. 38, pars. 104—25(b), (c).) The converse of this, of course, is that if the court does not order acquittal, then the State must have met its burden of proving guilt beyond a reasonable doubt. Our supreme court has stated that a discharge hearing:

> "[I]s to be an 'innocence only' hearing, that is to say, a proceeding to determine only whether to enter a judgment of acquittal, not to make a determination of guilt. The question of guilt is to be deferred until the defendant is fit to stand trial. That is clear from the language of section 104—25 of the Act." *People v. Rink* (1983), 97 Ill. 3d 533, 543, 455 N.E.2d 64, 69.

Returning to the text of the statute, section 104—25(f) provides:

> "If the court fails to enter an order of acquittal the defendant may appeal from such judgment in the same manner provided for an appeal from a conviction in a criminal case." Ill. Rev. Stat. 1983, ch. 38, par. 104—25(f).

Interestingly, then, while guilt is not to be technically established, any order denying acquittal is directly appealable. Therefore, the defendant here is permitted to appeal the order of the court refusing to acquit him of counts I and IV.

■■■■ Some additional comments concerning the discharge hearing statute are necessary. Significantly, only if the State sustains its burden of proof at the discharge hearing may a defendant be remanded for a period of treatment longer than the one-year period from the finding of unfitness for in section 104—23. (*People v. Rink* (1983), 97 Ill. 2d 533, 455 N.E.2d 64.) Defendants are not to be committed solely because they are unfit to stand trial; the primary foundation for commitment is evidence of criminal acts or offenses perpetrated. (*People v. Polachek* (1984), 128 Ill. App. 3d 200, 205, 470 N.E.2d 584,587; *People v. Raseaitis* (1984), 126 Ill. App. 3d 600, 467 N.E.2d 1098.) By statute, the defendant's extended commitment period is dependent on the most serious charge upon which the State has sustained its burden. For Class 2, 3, or 4 felonies, the maximum treatment period is 15 months; for Class 1 or Class X felonies, the maximum treatment period is two years; for a charge of murder, five years. Ill. Rev. Stat. 1983, ch. 38, par. 104—25(d)(1), (2).

Section 104—25(g) governs the procedures at the expiration of the extended treatment periods, providing in part that a court may proceed to trial upon a finding at this time that the defendant is fit. (Ill. Rev. Stat. 1983, ch. 38, par. 104—25(g)(1).) If the defendant continues to be unfit, he shall either be remanded for civil commitment or released. (Ill. Rev. Stat. 1983, ch. 38, pars. 104—25(g)(2), (3).) In no event may any treatment period exceed the maximum sentence the defendant would have been subject to had he or she been actually convicted in a criminal proceeding. Ill. Rev. Stat. 1983, ch. 38, par. 104—25(g)(4).

We may now briefly summarize the relevant testimony adduced at the discharge hearing. Staunton Chief of Police Larry Grabruck stated he received a telephone call on September 24, 1984, indicating someone had broken into a vacant home. When Chief Grabruck arrived at the house, he discovered the defendant whom he had known for years, inside with the television and air conditioner turned on. All the doors were locked. Chief Grabruck asked the defendant to leave the house and talk, but defendant stated it was his house, he did not have to leave, and he would not allow anyone else to enter. After continuing to knock on the door for several minutes, Grabruck suddenly felt a liquid falling on him. He looked up and saw the defendant spraying something out an open transom. He testified that although he did not know what the liquid was, it caused a "tingling sensation" to his forehead and arm.

Grabruck then went to the side door of the house with a key the owner had given him. After he knocked at that door and then inserted the key, Grabruck testified, he heard a gunshot. He then called for as-

sistance. Four officers arrived, but heard nothing inside the house except for the television. After 15 minutes elapsed, the officers broke in through a side door. The defendant offered no resistance. The officers found several fully loaded firearms in the house. A can of mace was also recovered.

Defendant's mother, Helen McBrien, testified that she and her son had lived in the house in question for several years, but had moved out in 1981.

Initially, the defendant on appeal challenges the sufficiency of count IV of the information, which reads that the defendant committed the offense of:

"UNLAWFUL USE OF WEAPONS, in that said defendant carried and possessed a loaded Harrington & Richardson 22 magnum revolver, a loaded Ruger 22 caliber semi automatic pistol and a loaded Savage over-under 22 caliber over-20 gauge shotgun with the intent to use same unlawfully against Larry Grabruck and others the same being deadly weapons in violation of the Criminal Code of 1961, as amended, Paragraph 24—1a2, Chapter 38, Illinois Revised Statutes."

In pertinent part section 24—1(a)(2) of the Criminal Code of 1961 provides:

"(a) A person commits the offense of unlawful use of weapons when he knowingly:

\* \* \*

(2) Carries or possesses with intent to use the same unlawfully against another, a dagger, dirk, billy, dangerous knife, razor, stiletto, broken bottle or other piece of glass, stun gun or taser *or any other dangerous or deadly weapon or instrument of like character* \* \* \*." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 38, par. 24—1(a)(2).

Defendant cites *People v. Rutledge* (1984), 104 Ill. 2d 394, 472 N.E.2d 438, as squarely on point. In *Rutledge,* the defendant was convicted of possession of a deadly weapon, a pistol, with intent to use it unlawfully in violation of section 24—1(a)(2). The supreme court, however, reversed the conviction. The court found that the General Assembly did not intend to include any sort of firearm within the term "any other dangerous or deadly weapon or instrument of like character" under section 24—1(a)(2); other provisions of the Criminal Code were applicable to firearms instead. A review of the statute indicates that, by its terms, it specifically names certain instruments which are not in the nature of a gun. The rule of *ejusdem generis* requires that where general words follow specific words, as they do here, then the general

terms must be construed to include only the same type of items indicated by the specific words. Defendant therefore maintains under *Rutledge* that he could not be convicted of unlawful use of firearms pursuant to this enumerated statute.

■■ ■ To allege the commission of an offense, any proper criminal charge must be in writing, stating the name of the offense, setting forth the nature and elements of the offense, and citing to the statutory provision alleged to have been violated. (Ill. Rev. Stat. 1983, ch. 38, par. 111—3.) Still, it has been repeatedly held that the mere reference in a charging instrument to an incorrect chapter or section of a statute is regarded as a formal rather than a substantive defect. (*People v. Castro* (1983), 113 Ill. App. 3d 265, 268, 446 N.E.2d 1267, 1269; *People v. Boyd* (1980), 87 Ill. App. 3d 978, 981-82, 409 N.E.2d 392, 396; *People v. Oswald* (1979), 69 Ill. App. 3d 524, 527, 387 N.E.2d 886, 888; *People v. Dismore* (1975), 33 Ill. App. 3d 495, 498, 342 N.E.2d 151, 154; *People v. Parr* (1970), 130 Ill. App. 2d 212, 219-20, 264 N.E.2d 850, 855; see also Ill. Rev. Stat. 1983, ch. 38, par. 111—5.) As such, formal defects do not warrant reversal unless the defendant demonstrates prejudice by the miscitation (*People v. Boyd* (1980), 87 Ill. App. 3d 978, 409 N.E.2d 392; *People v. Oswald* (1979), 69 Ill. App. 3d 524, 387 N.E.2d 886), particularly where the language in the charging instrument sets forth the crime charged with sufficient specificity to apprise the defendant of the offense with which he is charged.

■ We perceive the reference to section 24—1(a)(2) in count IV of the information as an incorrect citation and thus a formal defect not requiring reversal. Defendant has not demonstrated, and we have been unable to discern, any prejudice as a result. The language of count IV sufficiently informed the defendant of the charge against him for unlawful possession of firearms. We also consider immaterial the fact that count IV includes the term "with the intent to use same unlawfully," which defendant argues tracks the language contained in section 24—1(a)(2) and therefore, he believes, indicates the State meant to charge him under that particular provision. The better view, in our opinion, is that the inclusion of that phrase was mere surplusage.

■ More importantly, we note that a formal defect in a charging instrument may be waived by defendant's failure to make a timely challenge in the circuit court. (*People v. Walker* (1980), 83 Ill. 2d 306, 314, 415 N.E.2d 1021, 1025; *People v. Barney* (1959), 15 Ill. 2d 503, 507, 155 N.E.2d 615; *People v. Oswald* (1979), 69 Ill. App. 3d 524, 387 N.E.2d 886.) When challenged for the first time on appeal, a complaint will be held sufficient:

"[I]f it apprised the accused of the precise offense charged with

sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. [Citations.]" (*People v. Pujoue* (1975), 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440.)

Defendant at no time below raised as error the adequacy of the charging instrument. Again, we deem that count IV sufficiently informed the accused of the offense. Should the defendant someday attain fitness and be tried on this count, he could plead any resulting conviction as a bar to future prosecution arising from the same incident. We therefore conclude that waiver applied here even if the reference to section 24—1(a)(2) was not a typographical or clerical error.

■ ■ Next, defendant contends he was not proved guilty of aggravated battery beyond a reasonable doubt. Count I alleged the defendant caused bodily harm to a known peace officer engaged in the execution of his official duties by spraying mace on his head, face, and arms. Defendant was cited with a violation of section 12—4(b)(6) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(6)).

Section 12—4(b) provides that an act of simple battery will constitute aggravated battery, a Class 3 felony, in certain enumerated situations, including when a person committing a battery knows the individual harmed to be a peace officer engaged in the execution of his official duties. Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(6).

It is fundamental, then, that in order to establish an aggravated battery of this type, the State must first prove a simple battery. Equally clear is that under section 12—3(a) (Ill. Rev. Stat. 1983, ch. 38, par. 12—3(a)), a battery may be committed in either of two manners: (1) by causing bodily harm; or (2) by making a physical contact of an insulting or provoking nature. Thus, either of these two forms of battery committed against a police officer engaged in the execution of his official duties gives rise to the offense of aggravated battery. (*People v. Hale* (1979), 77 Ill. 2d 114, 395 N.E.2d 929.) The State is therefore required to either elect which type of battery to charge, or to charge in the alternative if it is unsure of its evidence. *People v. Veile* (1982), 109 Ill. App. 3d 847, 850, 441 N.E.2d 149, 151.

Count I specifically alleged that defendant "caused bodily harm" to Chief Grabruck. While this matter would be more easily settled if the second form of battery had been charged, the fact remains there are no allegations suggesting physical contact of an insulting or provoking nature. Thus, our inquiry is necessarily limited to the "bodily harm" prong of battery.

■ The question then resolves itself into whether bodily harm to the officer was proved beyond a reasonable doubt. We conclude that it

was not. As our supreme court stated in *People v. Mays* (1982), 91 Ill. 2d 251, 437 N.E.2d 633:

> "Although it may be difficult to pinpoint exactly what constitutes bodily harm for the purposes of the statute, some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent, is required. Otherwise there would be no need for the other type of battery, contact of an insulting or provoking nature." 91 Ill. 2d 251, 256, 437 N.E.2d 633, 635-36.

Chief Grabruck testified that he felt only a "tingling sensation" on his forehead and arm when the defendant sprayed a liquid on him from above. Grabruck was not aware at the time what the liquid was. A can of mace was later recovered from inside the house.

■■ Admittedly, spraying mace in someone's face or eyes can be a particularly painful experience. However, under the circumstances, a "tingling sensation" caused by a liquid, without more, is not the sort of physical pain contemplated under the "bodily harm" prong of aggravated battery. We recognize it was perhaps fortuitous from the defendant's standpoint that the officer was not looking up when the liquid was sprayed. Nevertheless, we specifically find that the State has failed to meet its burden of proof on the charge of aggravated battery as contained in count I. Nor can this be a case of waiver, even though the defendant did not raise the issue before the trial court; a clear exception to the general rule of waiver is a failure to prove a material allegation in a charging instrument. *People v. Friesland* (1985), 109 Ill. 2d 369, 374-75, 488 N.E.2d 261, 263.

■■ Finally, we must reiterate that, pursuant to section 104—25, an extended treatment period may only be ordered depending on the most serious charge upon which the State has sustained its burden of proof. Count I, constituting the most serious charge, detailed a Class 3 felony offense for which the maximum statutory treatment period is 15 months. (Ill. Rev. Stat. 1983, ch. 38, par. 104—25(d)(1).) Without the aggravated battery charge, the one-year maximum time limit set forth in section 104—23 is applicable instead. As we hold that the State did not sustain its burden of proof under count I of aggravated battery as alleged therein, we must reverse and remand for further proceedings.

Affirmed in part, reversed in part, and remanded.

McCULLOUGH, P.J., and WEBBER, J., concur.