THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM A. GRAMC, Defendant-Appellant.

Fifth District   No. 5—87—0349

Opinion filed April 24, 1989.

730

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Ellen Eder Irish, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

On March 3, 1987, the defendant, William A. Gramc, was tried before a jury and found guilty of aggravated criminal sexual assault. (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(1).) The defendant was sentenced to a 26-year term of imprisonment. On appeal, the defendant raises two issues: (1) whether he was convicted beyond a reasonable doubt; and (2) whether the trial court abused its discretion in sentencing the defendant. We affirm.

The complainant testified that on November 4, 1986, at 12:30 p.m. she was doing her laundry at the Shiloh Station Laundromat when the defendant entered. No one else was in the laundromat at that time. After a short conversation, the defendant checked the bathroom and the doors, then came up behind the complainant and grabbed her around the neck. The complainant fought to escape from the defendant, got as far as the front door, and attempted to pull it open. The defendant kicked the front door shut with his foot and displayed a pocket knife, stating, "[I]f you do what I say, I won't hurt you." The

defendant then forced the complainant into the bathroom of the laundromat and locked the door. The complainant, in what she described as an attempt to "try to psych" the defendant, asked him, "[W]hy you didn't you just come up and ask me instead of grabbing me?" The defendant then took money from the complainant's purse and forced her to perform an act of oral sex. The defendant next forced the complainant to undress, and after taking off his own clothes, he forced her to lie face down on the bathroom floor and submit to an act of anal sex. The defendant also forced the complainant to submit to an act of vaginal intercourse. During this time, the defendant told the complainant that he was dying of cancer and did not care what he did. The complainant estimated that they remained in the bathroom between 1½ and 2 hours, during which time they smoked several cigarettes. While still in the washroom, the complainant and the defendant became aware that other people were in the laundromat. The complainant stated that "he told me that I had better not scream or I would have that knife right through my throat."

Following the sexual assaults, the defendant ordered the complainant to get dressed and took her car keys from her purse. He reminded her that he still had the knife and ordered her to follow him out of the laundromat. As they began to leave, the complainant noticed that there were two people in the laundromat. They did not look at her as she left the laundromat, and she said nothing to them because she feared for her life.

The building which housed the laundromat contained five or six other businesses. These businesses were open, and there were 10 to 12 cars parked in the parking lot at the time. One of the businesses was only about 10 steps away from the complainant as she walked to the car. The defendant unlocked the driver's door of the complainant's car and got in. He then unlocked the passenger's door from the inside and the complainant got in the car. The complainant testified that she did not attempt to enter one of the businesses or run away because she was frightened.

After leaving the parking lot, the defendant drove the complainant to a convenience store. He entered the store with the car keys in his possession to buy the complainant a Pepsi which she had requested. The defendant was in the store for approximately five minutes and the complainant stated that he watched her from the store. The defendant's attorney questioned the complainant concerning her failure to cry out to people who were coming and going from the convenience store or to lock the car doors and sound the horn in an attempt to draw attention. The complainant testified that it would have

been futile to lock the doors in view of the fact that the defendant had the keys to the car in his possession, and that she mouthed "help me" through the glass but no one who was entering or leaving the store looked at her. Concerning her failure to run while the defendant was in the convenience store, the complainant stated: "I was afraid that nobody would help me and I would run out and get killed by a car or something because I was so afraid."

When the defendant returned to the car, he drove them behind a restaurant where the complainant was again forced to perform an act of oral sex. The defendant then drove the car without any apparent destination for some time, until the complainant told him that she needed to use the bathroom, hoping that he would take her to a service station where she could lock the bathroom door and scream until she was rescued. Instead, the defendant turned down an alley and instructed the complainant to relieve herself there. When she was finished, the defendant got out of the car and began to fondle her. In an attempt to "psych out" the defendant and make him stop, the complainant told him to stop because someone would see them. They then returned to the car, and while trying to leave, the defendant backed the car into a ditch. The defendant forced the complainant to try and push the car out of the ditch, and when she was unsuccessful, he told her to get behind the wheel while he pushed the car from the rear. When the defendant lifted the car out of the ditch, the complainant drove away, went directly to a service station, and called the police. The defendant was apprehended walking down the road about 15 minutes later. He was brought by the police to the service station where he was identified by the complainant.

After she had identified the defendant, the police drove the complainant back to the laundromat, where she finished doing her laundry. When questioned about this action, the complainant explained that the police had given her permission to go back and finish her laundry, and that the clothes she was washing when the defendant assaulted her represented her entire wardrobe and she feared they might be stolen. After finishing her laundry she returned home and called the police for further instructions. She was then taken to a hospital for an examination and tests. On cross-examination the complainant admitted that she had been under psychological treatment for some time but had been off medication for two years.

Veronica Paddock was the emergency room nurse at the hospital when the complainant arrived. She testified that the complainant was bruised on the neck and on one wrist.

Captain James Lay of the sheriff's department testified that after

the defendant was arrested, he took the complainant to the laundromat, where she identified a pack of cigarettes on the bathroom floor and a bottle of whiskey in the bathroom sink as belonging to the defendant. The complainant also gave Captain Lay a gray jacket and black belt from her car which she identified as belonging to the defendant. Captain Lay stated that to the best of his knowledge no weapon was ever found.

Ben Schmidt testified that he was working at Gas Mart on November 4, 1986, when a woman entered and asked to use the phone. She stated that she had been raped and needed to call the police. Schmidt stated that she was upset and crying. Later, when the defendant was brought to the gas station, the complainant identified him as her assailant. At that time she began to cry.

After closing arguments and instructions, the jury retired to deliberate. The jury sent a note back to the judge asking if it was necessary for them to find that the defendant had a weapon in order to convict him. After consultation with defense counsel and the prosecutor, the judge informed the jury that they had received all the necessary instructions and that they should review them. The jury found the defendant guilty of aggravated criminal sexual assault.

At the sentencing hearing, the State recommended a 15-year term of imprisonment. The defendant provided the court with a written statement of his version of the events of May 4, 1986. In that statement, he admitted having sex with the complainant in the bathroom of the laundromat and in her car. He claimed, however, that these acts were consensual. After considering the defendant's statement and the arguments of counsel, the court sentenced the defendant to a 26-year term of imprisonment.

■ The defendant argues that he was not proved guilty beyond a reasonable doubt because the complainant's testimony was so inconsistent with her having been a victim of forced sexual assault that it should be rejected as contrary to human nature and experience. In support of his position the defendant calls attention to the complainant's failure to flee or call for help; her actions after the defendant's arrest; and conduct of the defendant which was inconsistent with that of an assailant.

The defendant cites a number of specific situations where he claims that the complainant's failure to flee or seek help demonstrates that she was not an unwilling victim of sexual assault. The defendant notes that the complainant did not call for help when she heard people come into the laundromat while she and the defendant were in the bathroom, nor did she seek help from the two people in the laundro-

mat as she and the defendant walked by them on their way to the parking lot. The defendant also posits that the complainant could have run into one of the nearby businesses, or she could have fled when the defendant entered the driver's side door of her automobile while she remained outside. We believe that the complainant's inaction under these circumstances was understandable. The defendant had displayed a knife, threatened to kill the complainant, and told her that he was dying of cancer and didn't care what he did. He then brutally assaulted her in a public restroom in the middle of the day. Any reasonable person would be frightened in such a situation. This understandable fear, coupled with the defendant's reminder to the complainant that he still had the knife, and his promise to her that if she left without screaming he would drive down the road and let her out, are sufficient to explain the complainant's actions.

The defendant insists, however, that "most incredible of all was [the complainant's] lack of action when left totally alone in a public parking lot." The defendant notes that the complainant was alone in the parking lot of the convenience store for five minutes and yet she did not try to run away or roll down the car window and tell any of several passers-by of her situation. The defendant claims that the complainant's conduct was a nonverbal statement that she had not been assaulted. We do not agree.

The significance of a victim's failure to escape or seek assistance depends on the totality of facts and circumstances of the case. (*People v. Redman* (1986), 141 Ill. App. 3d 691, 704, 490 N.E.2d 958, 966; *People v. Daniels* (1984), 129 Ill. App. 3d 894, 899, 473 N.E.2d 517, 521.) There is no requirement that a victim of sexual assault attempt to escape or to cry out where she is restrained by fear or where to do so would endanger her life. (See *Redman*, 141 Ill. App. 3d at 704, 490 N.E.2d at 966; *People v. Hendon* (1975), 33 Ill. App. 3d 745, 750-51, 338 N.E.2d 472, 476.) In the instant case, the complainant testified that the defendant took the car keys when he left the car and that he watched her from the store. She also stated that she attempted to attract help by mouthing "help me" through the glass but no one who was entering or leaving the store looked at her. Concerning her failure to run away, she stated: "I was afraid that nobody would help me and I would run out and get killed by a car or something because I was so afraid." While a more courageous or less prudent person might have chosen a different course of action, we do not believe that her conduct was so incredible as to raise a reasonable doubt concerning the defendant's guilt. Similarly, we believe that her failure to attempt escape upon being let out of the car to relieve herself in the

alley, and while attempting to push the car out of the ditch, are explained by her fear of the defendant. Furthermore, we do not view the complainant's two attempts to "psych out" the defendant as indicative of a willingness on her part to engage in sexual activity, but rather as an attempt to avoid serious physical harm.

■ The defendant also maintains that the complainant's conduct following his arrest was inconsistent with that of a victim. After identifying the defendant as the person who had assaulted her, the complainant returned to the laundromat and finished doing her laundry. She testified that the police had given her permission to go back and finish her laundry and that the five loads she was washing when the defendant assaulted her were her entire wardrobe and she feared that it might be stolen. After completing the laundry she returned home and called the police for further instructions. The police then came to her home and took her to the hospital to be examined. While such behavior might be considered unusual, we do not believe that it casts serious doubt on the complainant's testimony. The defendant assaulted her while she was in the process of laundering her clothes. After identifying her assailant, she was taken by the police to the laundromat, where she identified various objects at the crime scene. Given that the clothes had already been partially laundered, and that she feared the possible loss of her entire wardrobe, completing the job once she had been taken to the laundromat may have been the simplest solution.

■■ The defendant also argues that testimony of the complainant of certain conduct of the defendant is not consistent with that of one who is committing a sexual assault. For example, the complainant testified that upon leaving the laundromat and reaching her car, the defendant got in on the driver's side, and then reached across the seat and unlocked the door on the passenger side so that the complainant could enter. The defendant opines that it is more likely that an assailant would have forced his victim to enter the driver's side door before him and slide across the seat while he maintained a hold on her. In addition, defendant claims that an assailant would not leave his victim alone in the parking lot of a convenience store, nor would he have allowed her to get behind the wheel of the car while he attempted to push it out of the ditch. Finally, defendant notes that he was arrested on a public road while walking in a direction that would lead him towards, rather than away from, the laundromat.

While we agree that such conduct *could* be viewed as evidence that the defendant was unconcerned about the complainant's escape or his own capture because no crime had been committed, there are reasonable alternative explanations. For example, it is possible that

the defendant felt that the threats made to the complainant and his reminders to her of the weapon which he carried had made her frightened and submissive enough to allow him to take a few risks. The resolution of such issues is the function of the trier of fact, and its determination will not be disturbed unless the evidence is so unsatisfactory as to raise a reasonable doubt of guilt. (*People v. Redman* (1986), 141 Ill. App. 3d 691, 490 N.E.2d 958; *People v. Szudy* (1982), 108 Ill. App. 3d 599, 439 N.E.2d 137.) We hold that the jury could have properly found that the defendant's conduct did not create a reasonable doubt of his guilt.

In support of his position the defendant cites a number of cases in which defendants convicted of sex offenses have had their convictions reversed. (See, *e.g., People v. Taylor* (1971), 48 Ill. 2d 91, 268 N.E.2d 865; *People v. DeFrates* (1965), 33 Ill. 2d 190, 210 N.E.2d 467; *People v. Scott* (1950), 407 Ill. 301, 95 N.E.2d 315; *People v. Carruthers* (1942), 379 Ill. 388, 41 N.E.2d 521; *People v. Wright* (1986), 147 Ill. App. 3d 302, 497 N.E.2d 1261; *People v. Rosario* (1982), 110 Ill. App. 3d 1020, 443 N.E.2d 273; *People v. Darcy* (1974), 18 Ill. App. 3d 1068, 311 N.E.2d 353; *People v. Keeney* (1973), 10 Ill. App. 3d 296, 293 N.E.2d 492; *People v. Bain* (1972), 5 Ill. App. 3d 632, 283 N.E.2d 701; *People v. Blevins* (1968), 98 Ill. App. 2d 172, 240 N.E.2d 434.) The defendant contends that these cases stand for the principle that when a complainant is in control of her faculties and she passes up opportunities to flee or get help over a long period of time, her allegations of forced sexual acts and abduction must be rejected. We have examined the cases cited by defendant and we do not find them to be dispositive. We adhere to the general rule that a court of review will not disturb a conviction unless the evidence is so palpably contrary to the verdict or so unsatisfactory and unconvincing that it raises a serious doubt of the defendant's guilt. (*People v. DuPree* (1987), 161 Ill. App. 3d 951, 962, 514 N.E.2d 583, 591.) Whether such a doubt exists will, of course, depend upon the facts unique to each case.

■ In the instant case, we hold that the evidence was sufficient to find the defendant guilty beyond a reasonable doubt. Although it is the duty of a reviewing court to carefully examine the evidence in a case alleging sexual offenses, the court must not usurp the function of the trier of fact in weighing the credibility of the witnesses and evaluating the evidence presented. (*People v. Jameson* (1987), 155 Ill. App. 3d 650, 656, 508 N.E.2d 267, 272.) If the testimony of the complaining witness is clear and convincing or is corroborated by some other facts or evidence, it is sufficient to support a finding of guilty. (*People v. DuPree* (1987), 161 Ill. App. 3d 951, 960, 514 N.E.2d 583, 588; *Peo-*

*ple v. Daniels* (1984), 129 Ill. App. 3d 894, 899, 473 N.E.2d 517, 521.) The testimony of the complainant in the present case was clear and convincing and corroborated by her prompt complaint after escaping from the defendant. (See *People v. Redman* (1986), 141 Ill. App. 3d 691, 490 N.E.2d 958.) Moreover, her testimony was further supported by the bruises observed by the emergency room nurse and the testimony that when the complainant entered the Gas Mart to call the police she was upset and crying.

Finally, the defendant contends that the trial court abused its discretion in sentencing him to a 26-year term of imprisonment when the State's Attorney recommended only a 15-year term. We disagree.

Absent an abuse of discretion by the trial court, a sentence may not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 884.) "[T]he trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight." (*Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 887.) Furthermore, as the defendant acknowledges, a prosecutor's sentencing recommendation is not binding on the trial court. *People v. Dorris* (1982), 110 Ill. App. 3d 660, 442 N.E.2d 951.

In the instant case, the defendant's presentence report indicates that he was convicted in Missouri in 1980 for felony theft and placed on four years' probation. This probation was terminated early due to his incarceration in Illinois when he was found guilty in a jury trial of aggravated battery to a child and sentenced to seven years in the Illinois Department of Corrections. He was released on mandatory supervised release on January 18, 1985, and was arrested approximately four months later on a charge of battery, to which he pleaded guilty. He was again arrested less than a year later, on April 14, 1986, for resisting a peace officer, and he again pleaded guilty.

At sentencing, the court listed the factors in aggravation, including that the defendant's conduct threatened serious physical harm to the victim in addition to the trauma of the criminal sexual assault itself. The court detailed the facts of the defendant's prior criminal history, his violation of probation from Missouri, and his violation of parole in Illinois. In sentencing the defendant, the court stated:

> "So I find that you not only have a history of criminality, but you have a certain amount of disrespect for the system or the meaning behind all of it in light of the fact that you have chosen to violate your probation before and your parole thereafter. I would think a sentence in this case is necessary to deter oth-

ers. I don't find anything mitigating in your actions herein and I tend to disagree with the State. I don't think you ought to receive fifteen years in the penitentiary. I think you ought to receive twenty-six years in the penitentiary."

The court's observations and specific finding that the State's Attorney's recommendation was inadequate indicate that the trial court weighed the evidence and the State's recommendation and came to the conclusion that the seriousness of the defendant's conduct was such that a 15-year sentence as recommended by the State's Attorney was inappropriate. We find no abuse of discretion by the trial court in sentencing the defendant.

For the reasons given above, we affirm the defendant's conviction for aggravated criminal sexual assault and affirm his sentence.

Affirmed.

GOLDENHERSH and RARICK, JJ., concur.