THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. OTIS EDWARDS, Defendant-Appellant.

First District (5th Division)   Nos. 1—90—3345, 1—90—3402 cons.

Opinion filed February 19, 1993.—Rehearing denied July 7, 1993.

James J. Cutrone, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Andrew R. Dalkin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Defendant Otis Edwards, as well as codefendants Lennon Hayes and Rodney Wilson, were charged by way of indictment with first-degree murder, conspiracy, attempted armed robbery, and armed violence. Defendant alone was charged with the offense of solicitation.

On October 20, 1990, following a bench trial, defendant was acquitted of all offenses except solicitation. Codefendant Hayes was acquitted of all charges, and Rodney Wilson was convicted of second-degree murder. Defendant now appeals his conviction for solicitation alleging lack of probable cause for the grand jury to indict, insufficiency of the evidence to convict, constructive amendment of the indictment, and violation of collateral estoppel and double jeopardy principles (based on the simultaneous acquittal of conspiracy and conviction of solicitation). For the reasons which follow, we affirm the judgment of the trial court.

The evidence adduced at trial established that shortly after 1 a.m. on July 10, 1989, Larry Henderson (L.C.) was shot and killed in the hallway of his apartment building located at 4159 West Jackson Boulevard in Chicago. The occurrence witnesses whose trial testimony was relevant to charges against defendant Otis Edwards (O.T.) include Timothy Washington, Kenneth Wells, and Mose Hollins. Washington testified that on July 10, 1989, at approximately 1 a.m., he and several friends including the victim were seated on the front steps of a building located at 4159 West Jackson. Four people approached the fence enclosing the front yard: Lennon Hayes (nicknamed Lenny Pooh), Rodney Wilson (nicknamed Wookie), Mose Hollins and a fourth unidentified individual. Wilson, Hollins, and Hayes entered the yard and Washington stood up, giving Wilson his seat next to Henderson. Wilson whispered something to Henderson, who stood up and walked to the apartment building. Subsequently, Wilson fired two shots, striking Henderson in the back and killing him.

In addition to the above sequence of events, Washington also testified that prior to the shooting, he heard Henderson ask, "Is that O.T.'s car?" At this point Washington stated that he saw defendant's black Lincoln town car. However, on cross-examination Washington admitted that what he had seen was "an ordinary black Lincoln," and that while he knew that defendant had a black Lincoln, he did not know the license number of that specific car. Furthermore, he could not see who was actually driving the automobile at issue.

Kenneth Wells also testified that he was present in the front yard of the apartment building at 4159 West Jackson on July 10, 1989, at approximately 1 a.m. Like Washington, he observed Wilson, Hollins, and Hayes enter the yard and Wilson walk up and sit next to Henderson. He saw Wilson whisper something in Henderson's ear and heard Henderson say "that's O.T.'s car." Wells further testified that he then observed defendant's black Lincoln at the bus stop. However, on cross-examination Wells admitted that he could not say for sure that

it was defendant's car, as he did not know defendant's license number, did not notice the license number of the car, and did not see the driver. Wells confirmed Washington's account of the shooting which ensued.

Mose Hollins also testified at trial. While he admitted being at the 4159 West Jackson building at approximately 1 a.m. on July 10, 1989, he denied seeing defendant at that time. (Hollins did admit, however, that defendant had been at that location earlier in the evening (around 9 or 10 p.m.) looking for his daughter.) Hollins was then impeached with both his written pretrial statement and his testimony before the grand jury. In his written statement, Hollins acknowledged that just about 12:20 a.m., defendant had pulled up to the bus stop right in front of the apartment building at 4159 West Jackson. At this time, Lennon Hayes got in the car with defendant and drove off. They came back about 15 minutes later. At this point, Hayes called Wilson over to the car. Wilson leaned into the car and talked to defendant. After defendant was done talking, Hayes and Wilson walked over to where Henderson was seated on the front steps. The shooting then occurred in the manner described by the previous two witnesses. Hollins' grand jury testimony was identical to his written statement.

Defendant also gave a written statement of the events which occurred on July 10, 1989. In his statement, he admitted that at 12:30 a.m. he saw Lennon Hayes and that Hayes got into his car and they began to drive around. As they drove, Hayes and defendant were talking about more money for Hayes, who made a living selling dope for defendant. They saw Henderson outside the 4159 building and then drove to the "spot" (a dope house at 4129 West Jackson) where they saw Wilson. Defendant told Hayes to call Wilson over to the car. When Wilson came, defendant said: "You go get your money from him [Larry Henderson] and you do the same thing to him as he did to you." (Defendant explained that he meant that Wilson, Hayes, and Hollins should go and rob Henderson and rough him up the way Henderson had previously done to Wilson.) After this, Hayes got out of the car and, with Wilson, walked back to the house where Henderson was sitting. Defendant then pulled around to the bus stop because he wanted Henderson to see him and to know that Wilson was his worker, and "not to mess with him anymore." Shortly thereafter, Wilson ran out of the yard and said, "I killed him."

The trial judge considered the substance of defendant's confession along with the testimonies of Washington, Wells, and Hollins. Based on this evidence, he found defendant guilty of solicitation to commit

robbery and sentenced him to four years in the Illinois Department of Corrections.

On appeal, defendant contends that the trial court erred in denying his pretrial motion to dismiss the indictment, as it was the prosecutor, and not the grand jury, who found probable cause to believe that defendant committed the offense of solicitation. In support of this theory, defendant argues that the grand jury heard no evidence that would support the return of the indictment charging defendant with the offense of solicitation. The evidence heard by the grand jury in this regard consisted solely of the testimony of Detective James Capesius, which consisted of the following questions and answers:

"Q. You were assigned to investigate the alleged first degree murder, attempt armed robbery, armed violence, solicitation to commit murder committed by OTIS EDWARDS, LENNON HAYES and RODNEY WILSON against Larry Henderson on or about July 10, 1989.

A. I was.

Q. Did your investigation show Larry Henderson was alive prior to 0112 hours on July 10, 1989?

A. Yes, it did.

Q. Did your investigation show Larry Henderson was in the area of 4159 West Jackson in Chicago, Cook County at the time?

A. Yes. It did.

Q. And were defendants Otis Edwards, Lennon Hayes and Rodney Wilson also present at that time?

A. They were.

* * *

Q. Did your investigation also show that one of the codefendants ordered the other two codefendants to rob the victim, Larry Henderson?

A. That's correct.

Q. Did your investigation show that defendants—did your investigation show that one of the codefendants ordered the other codefendant to rob the victim at gunpoint?

A. That's correct."

■ On appeal, defendant maintains that based on the above testimony, no rational person could have concluded that it was he as opposed to Wilson or Hayes who committed the offense of solicitation. Illinois case law provides that "an indictment will not be quashed unless all the witnesses were incompetent or all the testimony upon which it was found was incompetent." (*People v. Jones* (1960), 19 Ill.

2d 37, 41, 166 N.E.2d 1, 3.) The *Jones* court further defines incompetent testimony as testimony given by a witness disqualified by law (such as one disqualified because of complete mental derangement). The testimony at bar was certainly not disqualified by law and therefore not incompetent. Furthermore, the Illinois Supreme Court has indicated that where there is some evidence in support of the criminal conduct charged, the court would decline to inquire into the adequacy of that evidence. (*People v. Rodgers* (1982), 92 Ill. 2d 283, 288, 442 N.E. 2d 240, 243, citing *People v. Whitlow* (1982), 89 Ill. 2d 322, 433 N.E.2d 629; see also *People v. Shaw* (1985), 133 Ill. App. 3d 391, 400, 478 N.E.2d 1142, 1150 (in which the appellate court found the standard established in *Rodgers* had been met because the evidence submitted to the grand jury did "tend to connect" the defendant to the theft at issue).) This evidence which connects may be any direct or circumstantial evidence from which an inference of criminal conduct can be derived. (*Rodgers*, 92 Ill. 2d at 290.) Based on the evidentiary standard thus enunciated by Illinois courts, we find that the testimony presented to the grand jury was "some evidence" which "tended to connect" defendant to the criminal offense charged. The grand jury did not err in returning a true bill and the trial judge correctly refused to dismiss the indictment.

Defendant further contends that the evidence submitted by the State (namely, defendant's confession and the corroborating testimonies of Washington, Wells, and Hollins) is insufficient to prove the offense of solicitation. It is well settled that a person may not be convicted upon his confession alone; the State must prove the *corpus delicti* by independent evidence. (See *People v. Perfecto* (1962), 26 Ill. 2d 228, 229, 186 N.E.2d 258; see also *People v. Lambert* (1984), 104 Ill. 2d 375, 472 N.E.2d 427.) However, this independent or corroborating evidence need not alone establish the crime beyond a reasonable doubt. "Once the required proof has been established and if the evidence of a criminal act corroborates the facts contained in the defendant's confession, then that evidence may be considered together with the confession in determining whether the *corpus delicti* was sufficiently proved." *People v. Stevens* (1989), 188 Ill. App. 3d 865, 878, 544 N.E.2d 1208, 1217.

■ Following the aforementioned standards, we must determine whether the testimonies of the three occurrence witnesses sufficiently corroborate defendant's confession to provide the *corpus delicti* of the offense of solicitation. Statutory authority indicates that "[a] person commits solicitation when, with intent that an offense be committed, other than first degree murder, he commands, encourages or requests

another to commit that offense." (Ill. Rev. Stat. 1989, ch. 38, par. 8—1.) Defendant was charged solely with "encouraging" the commission of the offense of armed robbery. He was convicted of soliciting the commission of the lesser included offense of robbery. The evidence considered by the trial judge consisted of defendant's confession (in which he admitted telling Wilson to "go and do to L.C. what he did to you") as well as the grand jury testimony of Mose Hollins and the trial testimony of Timothy Washington and Kenneth Wells. Although defendant argues that this record when viewed as a whole leaves an abiding and substantial doubt as to his guilt, we cannot agree. Defendant's confession which implied that he wanted the victim robbed and roughed up is substantially corroborated by statements of the other witnesses, not only placing defendant and his car at the scene, but also confirming the conversation between defendant and Wilson as well as the shooting which followed. Even though, as defendant points out, none of the witnesses knew his license plate and therefore could not positively identify the car, nonetheless they all saw a black Lincoln at the crime scene and knew that defendant drove such a car. This testimony combined with defendant's statement is enough to establish that it was "circumstantially" defendant's car and that defendant was present in the area of the incident immediately before the incident. Furthermore, although no witnesses overheard the conversation between defendant and Rodney Wilson, they all testified to the fact that Wilson approached defendant and that the conversation occurred. As the trial judge found, the fact that Wilson did approach and shoot the decedent shortly after some words were spoken with defendant corroborates defendant's own account of the conversation in which he encouraged the robbery which ensued. Thus we find that the trial and grand jury testimonies of Washington, Wells and Hollins substantially corroborate the confession of defendant, himself, and provide sufficient evidence upon which to base a finding of guilty.[1]

Defendant also argues that his fundamental right to be tried on a charge actually made has been violated because his conviction rests upon a constructive amendment of the charging instrument. In the instant action, defendant was charged by indictment with the statutory offense of solicitation, specifically by means of encouragement. (Ill.

---

[1]Although defendant cites to various rape and murder cases to support his insufficiency of the evidence arguments, we do not find these authorities instructive.

Rev. Stat. 1985, ch. 38, par. 8—1.) The language at issue in the indictment provided as follows:

"OTIS EDWARDS committed the offense of SOLICITATION in that HE, WITH THE INTENT THAT THE OFFENSE OF ARMED ROBBERY BE COMMITTED AGAINST LARRY HENDERSON, ENCOURAGED RODNEY WILSON AND LENNON HAYES TO COMMIT THAT OFFENSE IN VIOLATION OF CH. 38, sec. 8—1 (38—18—2) OF THE ILLINOIS REVISED STATUTES 1985."

While the solicitation statute referred to above may be violated (and charged) alternatively by "commanding, encouraging, or requesting" another to commit an offense (*People v. Cole* (1981), 98 Ill. App. 3d 309, 424 N.E.2d 393), defendant was charged solely with encouraging Rodney Wilson to commit the offense of armed robbery. The essence of defendant's argument is that the State offered no proof based on the encouragement theory, but provided evidence only on the alternative theory of solicitation by request which was never charged, thereby impliedly amending the indictment and violating defendant's constitutional and statutory rights. Although we recognize that a conviction may not be affirmed because the State may have proved at trial that the defendant committed an offense under an alternative but uncharged theory (*People v. Gresham* (1982), 104 Ill. App. 3d 81, 432 N.E.2d 654), a careful review of the record reveals that such a conviction did not occur in the case at bar.

■ The evidence of how the solicitation occurred consists of the statements of Hollins and the confession of defendant. Hollins indicated (in his testimony before the grand jury) that he had seen defendant and Hayes in defendant's automobile near the victim's house about one-half hour before the shooting. Hollins also saw Wilson walk over to the car, have a conversation with defendant, and subsequently go over to the apartment building where he shot Henderson. Defendant's own statement (which confirmed Hollins' account of the incident) indicated that he had told Hayes to call Wilson over to the car, which Hayes did. Defendant wrote that he then told Wilson: "You go get your money from him and you do the same thing to him as he did to you." By this, defendant meant that Wilson should rob the victim and rough him up a bit. The confession also established Hollins, Wilson, and Hayes worked for defendant selling drugs and acting as lookouts when necessary. Based on the above testimonies, the trial judge found that defendant was guilty of solicitation in that he had "urged" Wilson to commit robbery. Nowhere in his findings does the judge mention the word "request." Webster's definition of "urge" appears as follows:

"(1) to present in an earnest or pressing manner: press upon attention: insist upon: plead or allege in or as if in argument or justification: advocate or demand with importunity *** [;] (2) to undertake the accomplishment of with energy, swiftness, or enthusiasm *** [;] (3) a: to press the mind or will of: ply with motives, arguments, persuasions, or importunity *** [;] b: to be a compelling, impelling, or constraining influence upon: serve as a motivating impulse or reason for *** [;] (4) a: to force or impel in an indicated direction or to an indicated place." (Webster's Third New International Dictionary 2521 (1986).)

The definition of "encourage" is: (1) to give courage to: inspire with courage, spirit or hope; hearten; (2) to spur on: stimulate, incite; and (3) to give help or patronage to: foster. This same source provides that one of the synonyms of urge is "egg," which suggests encouraging, stimulating, or whetting a will or inclination that is hesitant, laggard, or dull such as in "egged me to borrow the money." (Webster's Third New International Dictionary 747 (1986).) Based on this authority, the meaning of "urge" (which the trial court determined that defendant did) is almost identical to the meaning of the word "encourage" as charged in the indictment, thus defeating defendant's argument that he was convicted on a theory that was not charged.[2]

Defendant finally maintains that his conviction for solicitation should be reversed because it violates the principles of collateral estoppel and double jeopardy. The doctrine of collateral estoppel provides that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in the particular lawsuit. (*Ashe v. Swenson* (1970), 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189.) The Illinois Supreme Court has expanded the doctrine of collateral estoppel and applied it to contrary determinations of fact in the same proceeding. (*People v. Frias* (1983), 99 Ill. 2d 193, 457 N.E.2d 1233.) These principles of collateral estoppel are consistent with both United States and Illinois constitutional safeguards

---

[2]Defendant argues that based on the appellate court decision in *People v. Cole* (1981), 98 Ill. App. 3d 309, 424 N.E.2d 393, solicitation by encouragement requires that the (criminal) idea originate with the perpetrator (in this case Wilson) while solicitation by request would require that the (criminal) idea originate with the individual actually charged with soliciting (in this case, defendant). Although we find this argument intellectually interesting, it really has no bearing on our determination of the issue at bar as the language and facts of our case do not require us to draw a distinction between the words "encourage" and "request." Furthermore, the *Cole* court's distinction as noted by defendant appears in the argument by the State and is not part of the official holding.

against double jeopardy (that no person shall be twice put in jeopardy for the same offense).

██ In order to evaluate defendant's collateral estoppel argument, a brief review of the charges and findings of the trial court is in order. All three defendants in the instant action (Edwards, Hayes, and Wilson) were charged with first-degree murder, attempted armed robbery, conspiracy, and armed violence. Edwards alone was charged with the offense of solicitation, as the evidence showed that he said to the others, "Go get your money, do to him what he did to you." After trial, Hayes was acquitted of all charges, Wilson was convicted of second-degree murder,[3] and defendant was convicted of solicitation. In his collateral estoppel argument, defendant emphasizes the fact that neither codefendant was convicted of an offense involving a criminal purpose.[4] He argues that for this reason, the principles of collateral estoppel bar his own conviction for encouraging (soliciting) a criminal purpose. What defendant neglects to note is that the offense of solicitation is complete when the principal offense is commanded, encouraged or requested with the intent that it be committed. (*People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840.) Whether or not the actual crime took place is meaningless under the applicable statute. (Ill. Rev. Stat. 1991, ch. 38, par. 8—1.) Defendant's offense was complete when the words at issue were spoken, and such a finding is neither inconsistent with nor barred by judicial determinations reflecting lack of criminal purpose of the codefendants.[5]

For the aforementioned reasons, we affirm the judgment of the circuit court.

Affirmed.

GORDON, P.J., and MURRAY, J., concur.

---

[3]This verdict was rendered in a separate jury trial.

[4]Second-degree murder involves acting under a sudden and intense passion and negligently or accidentally killing someone. Ill. Rev. Stat. 1991, ch. 38, par. 9—2.

[5]Defendant also advances the argument that based on double jeopardy and collateral estoppel principles, his acquittal of the conspiracy charge bars his conviction for solicitation. Such reasoning is flawed, as it fails to take into account the fact that the elements of these offenses are not identical (conspiracy requires a substantial step towards the commission of the offense) so that an acquittal on one does not bar a conviction on the other.