**Allison JENKINS, Petitioner–Appellee,**

v.

**Keith NELSON, Respondent–Appellant.**

**No. 97–1890.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 25, 1998.

Decided Sept. 10, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 22, 1998.*

---

* Judge Walter J. Cummings did not participate in the consideration of the petition for rehearing en banc filed in the above cause.

Henry L. Mason, III, Kathleen Mary Mulligan (argued), Sidley & Austin, Chicago, IL, for Petitioner–Appellee.

Michael M. Glick (argued), Office of Attorney General, Chicago, IL, for Respondent–Appellant.

Before POSNER, Chief Judge, and WOOD, JR., and DIANE P. WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Chicago Police Officers Fred Hattenberger and Jay Brunkella were assigned surveillance duty in conjunction with an ongoing drug investigation. During the stakeout, the officers encountered the petitioner, Allison Jenkins. The officers approached Jenkins, and a struggle occurred between Jenkins and Officer Hattenberger. Officer Hattenberger's gun discharged. The bullet struck Officer Brunkella, who was standing nearby, in the chest. Brunkella died from the gunshot wound. Jenkins was charged in state court with the aggravated battery of Officer Hattenberger and the felony murder of Officer Brunkella. Following a jury trial, Jenkins was convicted of both charges. After exhausting his state post-conviction review opportunities, Jenkins filed a petition for habeas corpus relief under 28 U.S.C. § 2254 in federal district court. The district court granted Jenkins' petition, and Respondent appeals.

## I. BACKGROUND

On September 26, 1986, four Chicago police officers were conducting a surveillance of drug dealing in front of the Gale Elementary School. Officers Brunkella and Hattenberger were stationed inside of the school. At trial, Officer Hattenberger testified that, as the two officers watched the area in front of the school, they saw a man whom Officer Brunkella identified as Allison Jenkins. Jenkins approached an occupied vehicle parked near the school and leaned inside. The officers observed hand movements between Jenkins and the car's driver, but could not see what the movements were. The car departed, and Jenkins crossed the street carrying a potato chip bag. Officer Hattenberger testified that Jenkins placed the bag under a fence in front of the school. Based on his law enforcement experience, Hattenberger surmised that Jenkins was stashing drugs in the potato chip bag. Hattenberger testified that his suspicions were proven correct when he later retrieved the potato chip bag and found that it contained marijuana.

The officers continued to watch Jenkins, who approached another man standing near

the school, Michael Jones. The parties' versions of exactly what transpired next differ. Hattenberger related the following scenario at trial. According to Hattenberger, the two officers decided to approach Jones and Jenkins. As Hattenberger approached Jenkins, Jenkins, seeing the officers, denied having anything on him. Hattenberger spoke to Jenkins, saying "Come here. Take it easy. I just want to talk to you." At that point, Jenkins took two or three steps toward Hattenberger. Hattenberger testified that Jenkins began making hand movements near his waist. Jenkins then turned and ran out into the street. Hattenberger chased Jenkins, yelling for him to stop.

Officer Hattenberger testified that prior to the surveillance he had heard from unidentified sources that Jenkins carried a weapon; however, Hattenberger stated that he did not see a weapon during his confrontation with Jenkins. Nevertheless, given Jenkins' hand motions, together with the information from the unidentified sources, Hattenberger believed that Jenkins was armed. When Jenkins failed to stop, Hattenberger drew his gun and chambered a bullet. The officer continued to chase Jenkins until Jenkins stopped abruptly and turned to face Hattenberger. The men were approximately fifteen feet apart.

Officer Hattenberger began to approach Jenkins, who was again making hand motions near his waist. When Hattenberger was close enough, he grabbed Jenkins' right arm with his left hand. Jenkins relaxed. When Hattenberger also relaxed, Jenkins began to swing his arms in an attempt to free himself from Hattenberger's grasp. In the struggle, Jenkins struck Hattenberger in the chest with his left elbow. Despite the elbowing, Hattenberger was able to maintain his grip on Jenkins' right arm. Jenkins tried to run, but instead ran right into Officer Hattenberger's left arm which was stretched across the front of Jenkins' body. Hattenberger tightened his grip on Jenkins and pulled Jenkins toward him in an attempt to get a more secure hold. Hattenberger wrapped his right arm around behind Jenkins. Hattenberger was still holding his gun in his right hand. The two men continued to struggle and fell to the ground with Hattenberger landing on top of Jenkins. As the men fell, Hattenberger tensed, causing his gun to discharge. The shot hit Officer Brunkella, who later died from the wound.

Jenkins' trial testimony painted a very different picture. Jenkins testified that Hattenberger's gun was drawn from the time he initially approached Jenkins. According to Jenkins, as Hattenberger approached him, the officer pointed the gun at him and told him to run so he could shoot him. Jenkins backed away from the approaching officer until he backed into Officer Brunkella who had approached him from behind. Brunkella restrained Jenkins and told Hattenberger to put away his gun, but Hattenberger did not. Instead, Hattenberger continued to approach Jenkins and then slapped Jenkins on the back with the gun. According to Jenkins, the gun discharged during the slap, striking Brunkella. Brunkella fell to the ground. Hattenberger tossed his gun away and pushed Jenkins to the ground, where they remained until other officers arrived.

Jenkins specifically denied elbowing Hattenberger. Additionally, Jenkins denied ever striking, struggling against, or pushing Officer Hattenberger. Hattenberger testified to photographs taken two days after the encounter which were admitted into evidence. The photographs showed a bruise on Hattenberger's torso consistent with Hattenberger's claim that Jenkins elbowed him in the chest. On cross-examination, Hattenberger admitted that it was possible that he sustained the bruise when he fell to the ground on top of Jenkins. However, Hattenberger testified that he "felt pain when [Jenkins] was swinging his arms and made contact with that area" when the two men were still standing and that he did not feel pain when he fell on top of Jenkins.

Hattenberger's gun was a Colt .45. This was his "secondary duty weapon." Hattenberger carried the Colt .45 holstered, with the safety off, but, as a safety measure, Hattenberger carried the gun without a chambered bullet. Therefore, in order to make the gun operational, Hattenberger would pull the slide back, causing the gun to automatically chamber a bullet from the magazine. The gun would then be ready to fire. At trial, a firearms expert testified that he had conducted tests on Hattenberger's

Colt .45 and had determined that it had a lighter than normal pull on the trigger to cause it to fire.

Jenkins was indicted for aggravated battery for causing bodily harm to Officer Hattenberger and for the felony murder of Officer Brunkella. At the close of evidence, the court gave the jury its instructions. The court gave two instructions with respect to the aggravated battery claim. The prosecution had submitted instructions on battery and aggravated battery. Jenkins' trial counsel did not object to the battery instruction, but after discussion it was agreed that the submitted aggravated battery instruction was not sufficiently clear. Jenkins' counsel requested a substitute instruction on aggravated battery. The court agreed to the substitution and used the substitute aggravated battery instruction in its charge to the jury. Both the battery and the aggravated battery instructions referenced not only the bodily harm type of battery for which Jenkins was indicted but also the second type of battery under Illinois law which consists of "physical contact of an insulting or provoking nature."

The prosecution submitted two jury instructions on felony murder which differed from the Illinois Pattern Instructions for felony murder, Illinois Pattern Instructions Criminal Nos. 7.01, 7.02. Jenkins' trial counsel did not object to the non-Pattern instructions, and they were included in the court's charge to the jury.

After some deliberation, the jury informed the judge that they had reached a verdict on one of the charges but were deadlocked on the other. The judge ordered further deliberation, and, approximately two hours later, the jury returned its verdict. Jenkins was convicted on both counts and was sentenced to five years for the aggravated battery and twenty years for the felony murder with the sentences to run concurrently.

Jenkins raised numerous issues on direct appeal. *People v. Jenkins*, 190 Ill.App.3d 115, 137 Ill.Dec. 225, 545 N.E.2d 986 (1989). Among other things, Jenkins argued that his conviction was an unwarranted extension of the felony murder doctrine, that the felony murder instructions and the two battery instructions were erroneous, and that he was denied the effective assistance of counsel when his trial attorney failed to object to the erroneous instructions. The state appellate court rejected all of Jenkins' arguments and affirmed his convictions. *Id.*, 545 N.E.2d at 1005. Jenkins then petitioned the Illinois Supreme Court for leave to appeal. His request was denied. Jenkins filed a petition for post-conviction relief in Illinois state court, which was denied in May 1995. Jenkins then filed this Petition for Writ of Habeas Corpus.

In his habeas petition, Jenkins argues, among other things, that the felony murder instructions violated his right to due process by expanding the scope of felony murder without warning. He also asserts that he was denied the effective assistance of counsel when his trial counsel failed to object to the erroneous instructions on felony murder and battery. On March 13, 1997, the district court granted Jenkins' petition because it found that the jury instructions on felony murder violated Jenkins' right to due process because they did not include a causation element. Additionally, the court found that trial counsel's failure to object to the erroneous felony murder instructions deprived Jenkins of the effective assistance of counsel. Respondent filed a timely notice of appeal, and the district judge stayed the issuance of the writ of habeas corpus pending appeal.

## II. ANALYSIS

Respondent raises three arguments, any of which, if successful, would require reversal of the district court's order. First, Respondent asserts that Jenkins had procedurally defaulted on his felony murder instruction claim, and therefore, the district court erred in addressing it on the merits. Alternatively, Respondent argues that the felony murder instructions comport with Illinois law and with Supreme Court precedent and did not deprive Jenkins of his right to due process. Therefore, Respondent contends counsel's failure to object to the felony murder instructions did not constitute ineffective assistance of counsel. Finally, Respondent argues that any error that did occur was harmless. In response, Jenkins asserts that the district

court's decision regarding his felony murder claim was correct. Additionally, he states that his trial counsel's assent to the court's battery jury instructions constituted ineffective assistance of counsel.

Since Jenkins filed his habeas petition prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we review under the standard in effect prior to AEDPA. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 2061, 138 L.Ed.2d 481 (1997). We therefore review the district court's conclusions of law *de novo*. *Lieberman v. Washington*, 128 F.3d 1085, 1091 (7th Cir.1997). The state courts' conclusions of law are also subject to *de novo* review; however, we give deference to factual determinations made by the state trial and appellate courts, viewing them as "presumptively correct." *Id.* (citations omitted).

### A. Felony Murder Instruction

Jenkins raises two claims involving the trial court's jury instructions on felony murder. Jenkins argues that the instructions violated his right to due process by expanding the scope of felony murder without warning. Additionally, Jenkins asserts that he was deprived of the effective assistance of counsel when his trial attorney failed to object to the erroneous instructions.

■■■ As an initial matter, we must address Respondent's contention that Jenkins procedurally defaulted on his felony murder instruction claim pursuant to an adequate and independent state law ground by failing to object to the instructions at trial. If a state court does not reach a federal issue because of a state procedural bar, that issue cannot be raised in a writ of habeas corpus to a federal court without a showing of cause and prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 90–91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Under Illinois law, in order to preserve an issue for appeal, a party must make a contemporaneous objection to the error at trial and file a written post-trial motion raising the error. *People v. Enoch*, 122 Ill.2d 176, 119 Ill.Dec. 265, 522 N.E.2d 1124, 1130 (1988). While Jenkins concedes that he failed to make a contemporaneous objection to the instructions, the mere fact that a

federal habeas petitioner failed to abide by a state procedural rule is not sufficient to preclude habeas relief. *See Harris v. Reed*, 489 U.S. 255, 261, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). A state procedural default does not bar consideration of a federal claim on habeas review "unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Id.* at 263, 109 S.Ct. 1038 (citations omitted).

Respondent contends that the Illinois Appellate Court expressly determined that Jenkins had waived his felony murder instruction claim by failing to object at trial. However, a careful reading of the decision reveals that this is not the case. While the state court noted the absence of a contemporaneous objection and outlined the general waiver principle, it did not expressly state in plain language that its decision was based on the procedural default. *Jenkins*, 137 Ill. Dec. 225, 545 N.E.2d at 994–96. Additionally, the court did not limit itself to a discussion of the state procedural bar, rather, it went on to consider Jenkins' claim on the merits. *Id.* 545 N.E.2d at 995–96. Under *Harris*, in order to foreclose review on habeas, the state court must actually state in plain language that it is basing its decision on the state procedural default and that other grounds are reached only in the alternative. *Rogers–Bey v. Lane*, 896 F.2d 279, 282 (7th Cir.1990). The state appellate decision in Jenkins' case does not include an express statement detailing its reliance on procedural default, nor does it state that the court is reaching the merits of Jenkins' claim only in the alternative. Given this lack of a clear statement of intent by the state court, we conclude that Jenkins' felony murder instruction claim is not procedurally barred. We may therefore address the merits of his claim.

As the district court noted, the ultimate question is whether the trial court's felony murder instructions deprived Jenkins of his due process rights. The prosecution submitted two non-Pattern jury instructions dealing with felony murder. Illinois Supreme Court Rule 451 provides that when an applicable Pattern jury instruction exists, a trial court is

required to use the Pattern instruction rather than a non-Pattern instruction, unless the Pattern instruction does not accurately state the law. *People v. Wilkerson*, 87 Ill.2d 151, 57 Ill.Dec. 628, 429 N.E.2d 526, 529 (1981). Jenkins' trial counsel did not object to the non-Pattern instructions, and the judge included the two instructions in his charge to the jury.

The first non-Pattern felony murder instruction given by the court stated:

A person commits the offense of murder when he commits a forcible felony and an individual is killed during the course of the commission of that forcible felony.

In contrast, the applicable Illinois Pattern Instruction provides:

A person commits the offense of murder when he kills an individual without lawful justification if, in performing the acts which cause the death, he is committing the offense of [aggravated battery].

IPI Criminal No. 7.01. Similarly, the court further instructed the jury that

To sustain the charge of murder, the state must prove the following propositions:

*First*: That the defendant committed the offense of aggravated battery; and

*Second*: That Officer Jay Brunkella was killed during the course of the commission of that offense.

The applicable Illinois Pattern Instruction states:

To sustain the charge of murder, the state must prove the following propositions:

*First*: That the defendant performed the acts which caused the death of [Officer Brunkella]; and

*Second*: That when the defendant did so, he was committing the offense of [aggravated battery].

IPI Criminal No. 7.02.

■ Jenkins argues that the two felony murder instructions given by the court violated his right to due process by deleting the element of causation from the offense. Due process prevents a criminal defendant from being convicted of an offense "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *see also Henderson v. Kibbe*, 431 U.S. 145, 153, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). The Illinois felony murder statute in force at the time of Jenkins' trial provided "[a] person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death, ... he is committing a forcible felony other than voluntary manslaughter." 720 ILCS 5/9–1(a)(3) (1985). The Pattern instructions accurately track this statute. *See Jenkins*, 137 Ill.Dec. 225, 545 N.E.2d at 995. However, as the Illinois Appellate Court noted, Illinois cases "reflect no requirement that the defendant be both the person who commits the felony and the person who performs that act which causes the victim's death." *Id.* Illinois courts have broadly interpreted the doctrine of felony murder, holding that "[a] felon is responsible for those deaths which occur during a felony and which are the foreseeable consequence of his initial criminal acts." *People v. Graham*, 132 Ill.App.3d 673, 87 Ill.Dec. 814, 477 N.E.2d 1342, 1346 (1985) (citation omitted). In Jenkins' case, the appellate court determined that the non-Pattern felony murder instructions that were given "stated the law applicable to the facts of [the] case more accurately than the IPI instruction[s]." *Jenkins*, 137 Ill.Dec. 225, 545 N.E.2d at 996.

■ In order to determine whether the instructions given violated Jenkins' right to due process, we must determine whether they removed a necessary element of felony murder from the jury's consideration. We agree with the district court's holding that causation is an essential element of felony murder under Illinois law. *See People v. Dekens*, 182 Ill.2d 247, 230 Ill.Dec. 984, 695 N.E.2d 474, 477 (1998) (defendant is liable under felony murder doctrine for "any death proximately related to the defendant's criminal conduct"); *People v. Lowery*, 178 Ill.2d 462, 227 Ill.Dec. 491, 687 N.E.2d 973, 978 (1997) ("A felon is liable for those deaths which occur during a felony and which are the foreseeable consequence of his initial criminal acts."); *People v. Brackett*, 117 Ill.2d 170, 109 Ill.Dec. 809, 510 N.E.2d 877, 880

(1987) ("when criminal acts of the defendant have contributed to a person's death, the defendant may be found guilty of murder"); *People v. Burke,* 85 Ill.App.3d 939, 41 Ill.Dec. 230, 407 N.E.2d 728, 730 (1980) (stating that the necessary elements of felony murder under § 9–1(a)(3) of the Illinois Criminal Code are "(1) evidence that shows the defendant was a participant in a forcible felony and (2) evidence that shows that an innocent party was killed during the commission of the felony as a direct and foreseeable consequence of it."). Under Illinois law, the defendant's acts need not be the sole and immediate cause of death, but they must have been a contributing factor. *Lowery,* 227 Ill.Dec. 491, 687 N.E.2d at 978 (citing *Brackett,* 109 Ill.Dec. 809, 510 N.E.2d at 880). Causation is a question of fact to be determined by the trier of fact. *Brackett,* 109 Ill.Dec. 809, 510 N.E.2d at 881.

Respondent asserts that the felony murder instructions given by the trial court adequately reflected the Illinois courts' interpretation of the statute. Respondent points to the language in the instruction which requires that the murder occur "during the course of the commission" of the aggravated battery to support his argument. However, this language requires only coincidence of time between the death and the defendant's *commission of a forcible felony.* It does not inform the jury of the necessity of finding some causal connection between the two events by determining that the death was a "foreseeable consequence" of Jenkins' initial criminal acts. At the very least, in order to obtain a conviction for felony murder under Illinois law, the prosecution must show that the defendant's acts contributed to the death. The instructions given standing alone were insufficient to make the jury aware of this requirement.

Respondent, relying on *Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), argues that even if the instructions erroneously omitted causation, the jury was nevertheless fully apprised by counsels' arguments as to the necessity of finding causation. Henderson was convicted of second-degree murder. Challenging his conviction in a habeas proceeding, Henderson argued that the district court erred in failing to give the jury an instruction on causation, a necessary element of his offense. He contended that this omission created the danger that the jury failed to make the necessary finding of proof beyond a reasonable doubt on every element of the offense of conviction. The Court held that the jury, although not specifically instructed on the issue of causation, was sufficiently informed that the case included a causation issue that it had to decide. *Id.* at 153, 97 S.Ct. 1730. The element of causation was stressed in both counsels' arguments and was included in the language of the statute and of the indictment, both of which were read to the jury. *Id.* Additionally, the Court noted that the evidence was "plainly sufficient" to prove causation beyond a reasonable doubt. *Id.* Given all of these facts, the Court held that it was unlikely the jury would have reached a different result had an instruction explaining causation been included. *Id.* at 156–57, 97 S.Ct. 1730.

None of the factors which the Court found persuasive in *Henderson* were present in Jenkins' trial. In *Henderson,* the jury was expressly informed of the need to find causation. Henderson based his claim on the trial judge's failure to give an instruction explaining the meaning of causation under New York law. During Jenkins' trial, not only was the Illinois concept of causation not presented to the jury, the jury was never informed that causation was a necessary element of felony murder. The jury in Jenkins' case was not presented with the felony murder statute. Respondent argues that statements by counsel for both sides sufficiently informed the jury of the necessity of finding causation. Specifically, Respondent contends that the district court erred by failing to notice that causation was placed at issue by both parties in their closing arguments. However, a close examination of the record supports the district court's conclusion. During closing arguments, defense counsel based his felony murder argument on the coincidence in time theory. He argued that Jenkins was not responsible for Brunkella's death because the gun did not go off during the aggravated battery when Jenkins allegedly elbowed the officer, but later when the

two men fell. Furthermore, while the prosecutor made several passing references to causation, he never stated that it was necessary for the jury to find that Jenkins' acts caused Brunkella's death. Instead, the prosecutor stated he was confident the judge would instruct the jury that under the felony murder charge they must determine, first, whether a forcible felony was being committed and, secondly, whether Officer Brunkella was "killed during the commission of that forcible felony." Counsels' arguments did not inform the jury of the necessity of determining causation; in fact, the attorneys' statements merely reiterated the erroneous felony murder instructions. None of the other instructions given to the jury cured this defect. An examination of the record as a whole reveals that the jury was only told that it must find that the murder occurred "during the course of" the aggravated battery. As discussed above, this requires coincidence, not causation. Therefore, as the district court correctly determined, the instructions given were erroneous because they permitted the jury to convict Jenkins for felony murder without first finding beyond a reasonable doubt that Jenkins' acts contributed to Officer Brunkella's death.

■■■■■ Our finding of error does not automatically require us to grant Jenkins' habeas petition. An error in a jury instruction defining a crime is a "trial error" rather than a "structural error." *California v. Roy*, 519 U.S. 2, 117 S.Ct. 337, 339, 136 L.Ed.2d 266 (1996) (per curiam) (citing *Arizona v. Fulminante*, 499 U.S. 279, 306–07, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). Therefore, it is subject to harmless-error analysis. *Id.* If the trial court's error was harmless, Jenkins' conviction will stand.[1] In a habeas proceeding, in order to determine whether a trial error was harmless we must determine whether the error " 'had substantial and injurious effect or influence in determining the jury's verdict' " which resulted in "actual prejudice" to the defendant. *Id.* 519 U.S. at ——, 117 S.Ct. at 338 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946))). Since our review is collateral, the error in question need not be harmless beyond a reasonable doubt; however, if, in applying the proper standard, we are "in grave doubt as to the harmlessness of the error," the conviction must be reversed. *Id.* 519 U.S. at ——, 117 S.Ct. at 338–39 (citing *O'Neal v. McAninch*, 513 U.S. 432, 115 S.Ct. 992, 995, 130 L.Ed.2d 947 (1995)).

■■■■■ In our harmless error determination, we must address two distinct issues: first, what standard should be applied in determining that the error was harmless and, secondly, how certain must we be that the error was harmless, under the appropriate standard, before we may leave the conviction in place. *See Peck v. United States*, 102 F.3d 1319, 1320 (2d Cir.1996) (Newman, C.J., concurring). While *California v. Roy* outlines the proper standard of review, it is unclear whether a reviewing court may consider all of the record evidence and predict what a properly instructed, reasonable jury would have found or whether the defendant's right to trial by jury limits that review to an examination of facts that the jury actually found to determine whether the actual findings were the functional equivalent of a finding on the omitted element. *See Roy v. Gomez*, 108 F.3d 242, 244–45 (9th Cir.1997) (Hug, C.J., dissenting); *Peck*, 102 F.3d at

---

1. Jenkins contends that Respondent has waived harmless error by failing to raise it before the district court. Generally, when a party fails to raise an issue in the district court, the issue is waived, and we will not consider it on appeal. *See Smith v. Farley*, 25 F.3d 1363, 1365 n. 2 (7th Cir.1994). While harmless error may be waived, *United States v. Giovannetti*, 928 F.2d 225, 226 (7th Cir.1991), this court has the discretion to overlook a party's failure to argue harmlessness. *United States v. Jewel*, 947 F.2d 224, 228–29 n. 5 (7th Cir.1991) (citing *Giovannetti*, 928 F.2d at

227). In determining whether to exercise this discretion, we must consider "the length and complexity of the record, whether the harmlessness of the error or errors found is certain or debatable, and whether a reversal will result in protracted, costly, and ultimately futile proceedings in the district court." *Giovannetti*, 928 F.2d at 227. As our analysis will show, in the present case, the harmlessness of the error is certain and further proceedings could only be futile. In the interest of judicial economy, we exercise our discretion and consider harmless error.

1326 (Newman, C.J., concurring).[2] Once we determine the proper method of review, if, after review, we are in grave doubt as to the harmlessness of the error, we must affirm the district court's grant of habeas relief. *O'Neal,* 115 S.Ct. at 994. Grave doubt occurs when in a judge's mind "the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.*

In light of this uncertainty, we must conduct our own analysis to determine the proper scope for our review. Although it was not set out expressly, we are convinced that the Supreme Court's decision in *Roy* requires us to review the record as a whole on habeas review to determine whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[3] In its first decision in *Roy,* the Ninth Circuit, citing *Carella v. California,* 491 U.S. 263, 267–68, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (Scalia, J., concurring), held that the error was not harmless because the court was unable to say that the jury necessarily found the omitted element beyond a reasonable doubt. *Roy v. Gomez,* 81 F.3d at 867. After making this determination, the Ninth Circuit then applied the *Brecht–O'Neal* harmless error standard. *Id.* at 868. In its analysis under *Brecht–O'Neal,* the Ninth Circuit held that "[w]hen a reviewing court is unable to conclude the jury necessarily found an element that was omitted from the instructions, it is unable to gauge the effect of the error on the jury's verdict. In this situation, a conscientious judge can only be 'in grave doubt as to

the harmlessness of the error'." *Id. (citing* O'Neal, *115 S.Ct. at 995).*

The Supreme Court reversed the Ninth Circuit's *en banc* decision, rejecting the *Carella* "facts the jury necessarily found" standard for cases on collateral review. *Roy,* 117 S.Ct. at 338. Instead, the Court stated that the *Brecht–O'Neal* "grave doubt" standard, without modification, was the correct measure of harmless error in habeas cases. *Id.* at ——, 117 S.Ct. at 339. While *Carella* requires a showing that the jury necessarily found the facts needed to prove an omitted element, *Carella,* 491 U.S. at 266–67, 109 S.Ct. 2419, the typical harmless error determination allows a reviewing court to examine the record as a whole in order to determine whether the element in question was overwhelmingly established by the evidence, such that a rational jury, absent the error, would have arrived at the same verdict. *See id.* at 267, 109 S.Ct. 2419 (Scalia, J., concurring). In *Brecht,* the Court engaged in this type of general harmlessness analysis, examining the record as a whole to determine whether the error in question "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 638, 113 S.Ct. 1710.

While Justice Scalia's concurrence in *Roy* attempts to establish a standard combining *Brecht–O'Neal* with *Carella,* this is exactly the approach that the Ninth Circuit majority had taken below. In reversing, the Supreme Court's per curiam majority stated that the dissenting Ninth Circuit judges were correct in their determination of the proper stan-

---

2. The per curiam opinion in *California v. Roy* clearly states that the appropriate standard for review is the deferential *Brecht–O'Neal* "grave doubt" standard. *Roy,* 117 S.Ct. at 339. Justice Scalia in his concurrence asserts that the per curiam opinion did not address the question of what constitutes the harmlessness to which this deferential standard should be applied. *Id.* Under his interpretation, the deferential "grave doubt" analysis goes only to certainty, the second prong of the analysis. Justice Scalia believes that the first prong of the analysis remains focused on what the jury actually found, since the Sixth Amendment requires more than appellate speculation as to the actions of a hypothetical jury. *Id.* 519 U.S. at ——, 117 S.Ct. at 339–40 (citations omitted). The per curiam opinion makes no response to Justice Scalia's interpretation.

3. This is the approach adopted by the majority of the other circuits to address this issue in habeas cases post-*Roy.* The Second and Ninth Circuits review to determine whether a properly instructed rational jury would have found the omitted element beyond a reasonable doubt. *See Peck v. United States,* 106 F.3d 450, 457 (2d Cir.1997); *Roy v. Gomez,* 108 F.3d 242, 243 (9th Cir.1997) (adopting the analysis of the dissent in *Roy v. Gomez,* 81 F.3d 863, 870–71 (9th Cir.1996) (Wallace, J., dissenting), *vacated,* 519 U.S. 2, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996)). The Third Circuit, on the other hand, has applied *Roy* together with the functional equivalent approach. *Smith v. Horn,* 120 F.3d 400, 417–18 (3d Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1037, 140 L.Ed.2d 103 (1998).

dard. *Roy,* 117 S.Ct. at 338. In that dissent, which was adopted as a majority opinion by the Ninth Circuit on remand, Judge Wallace noted that "[b]y first applying the stricter approach in *Carella,* the opinion eliminates the effect of *Brecht's* 'less onerous standard' of review." *Roy v. Gomez,* 81 F.3d at 870 (Wallace, J., dissenting) (citing *Brecht,* 507 U.S. at 635–39, 113 S.Ct. 1710). The dissent went on to point out that *Brecht* requires a reviewing court to thoroughly review the record in order to determine the error's effect, while *Carella* limits the inquiry to whether the jury necessarily found the uninstructed element. *Id.* The dissent believed that when a court reviews a trial error on a petition for habeas, it must follow *Brecht,* including *Brecht's* directive to review the entire record in order to determine the harmlessness of the error. *Id.*

■ We agree with Judge Wallace's analysis. The Supreme Court has directed us to apply the *Brecht–O'Neal* standard in cases such as the present one. *Brecht* clearly requires a reviewing court to make a *de novo* examination of the record as a whole in order to determine whether the error had substantial and injurious effect or influence in determining the jury's verdict. *Brecht,* 507 U.S. at 638, 113 S.Ct. 1710. Under this standard, we find the felony murder jury instruction error in Jenkins' case harmless. The facts in Jenkins' case are complicated; however, under the instructions given, it is clear that the jury did not credit Jenkins' testimony concerning the event. While Jenkins stated that the only contact between himself and Officer Hattenberger came when Hattenberger struck him on the back with his gun and later when the officer pushed him to the ground after the shooting, the jury found Jenkins guilty of aggravated battery. In order to reach this verdict while following its instructions, the jury must have found at the very least that Jenkins made physical contact of an insulting or provoking nature with Hattenberger. Additionally, the record contained evidence supporting a finding of causation. Hattenberger testified that Jenkins elbowed him in an attempt to break free from the officer's grasp and that when Hattenberger attempted to regain control of Jenkins, Jenkins continued to struggle, causing the two men to fall. Hattenberger testified that when he lost his balance, he tensed, causing his gun to discharge. Significantly, the jury found that Brunkella's death occurred "during the course of" the aggravated battery, and neither party put on evidence of any intervening force which could have been responsible for Brunkella's death.

As noted above, applicable Illinois law provides that a felon is responsible for those deaths which occur during a felony and which are the foreseeable consequence of his initial criminal acts. Jenkins' conduct was in the very heartland of this expanded concept of felony murder. Jenkins' acts in committing aggravated battery contributed to Officer Brunkella's death. But for Jenkins' struggling, Officer Hattenberger's gun would not have discharged. Additionally, it is foreseeable that struggling with an armed police officer could cause the officer's gun to discharge, injuring anyone at the scene. Given the findings actually made by the jury together with the other evidence in the record, a properly instructed, rational jury would have found causation beyond a reasonable doubt. Under the facts of this case, we have no doubt that the error in the felony murder instructions had no effect or influence on the jury's verdict.

■ Therefore, while we find that Jenkins' felony murder instruction claim was not procedurally defaulted, we hold that any error was harmless. Jenkins' felony murder instruction claim fails. Additionally, since the erroneous instructions did not prejudice Jenkins, counsel's failure to object to the instructions did not constitute ineffective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (holding that, in order to prove ineffective assistance of counsel, a defendant must show deficient performance by counsel and prejudice). Jenkins' felony murder ineffective assistance of counsel claim fails as well.

**B. Aggravated Battery**

■ As an alternative ground for habeas relief, Jenkins argues that he was denied the effective assistance of counsel by his trial

counsel's assent to and joint submission of battery jury instructions which enlarged the possible grounds for his conviction. Jenkins raised this aggravated battery claim below; however, because the district judge granted Jenkins' petition on the felony murder claim, she did not address the aggravated battery claim. The parties have briefed the aggravated battery issue before this court, and since we may uphold the district court's grant of habeas on any ground supported by the record that has not been waived, we consider Jenkins' aggravated battery claim as possible support for a grant of habeas corpus.

 Under Illinois law, a battery can be committed in either of two ways: (1) by causing bodily harm, or (2) by making physical contact of an insulting or provoking nature. 720 ILCS 5/12–3(a); *People v. McBrien*, 144 Ill.App.3d 489, 98 Ill.Dec. 610, 494 N.E.2d 732, 737 (1986). A simple battery under either prong becomes aggravated battery if it is committed against a person known by the defendant to be a peace officer in the execution of his official duties. 720 ILCS 5/12–4(b)(6); *People v. Hale*, 77 Ill.2d 114, 32 Ill.Dec. 548, 395 N.E.2d 929, 932 (1979). The two prongs of the battery statute are considered "alternative elements of the offense." *People v. Abrams*, 48 Ill.2d 446, 271 N.E.2d 37, 46 (1971). When charging a defendant with battery under Illinois law the prosecution is required to "elect which type of battery to charge, or to charge in the alternative if it is unsure of its evidence." *McBrien*, 98 Ill.Dec. 610, 494 N.E.2d at 737; *People v. Veile*, 109 Ill.App.3d 847, 65 Ill.Dec. 357, 441 N.E.2d 149, 151 (1982).

Jenkins was charged with aggravated battery only under the bodily harm prong. The indictment alleged that Jenkins

> intentionally and knowingly without legal justification, caused bodily harm to Fred Hattenberger, knowing him to be a peace officer to wit: of the city of Chicago, engaged in the execution of his official duties, to wit: affecting an arrest, by striking Officer Fred Hattenberger . . . .

However, the trial court's instructions to the jury on battery and aggravated battery included both possible types of battery. Specifically, prosecution's instruction # 16 stated:

> A person commits the offense of battery when he *intentionally or knowingly without legal justification and by any means causes bodily harm to* or *makes physical contact of an insulting or provoking nature with another person.*

(emphasis added). Additionally, joint instruction # 19a provided:

> To sustain the charge of aggravated battery, the State must prove the following propositions:
>
> First, that the defendant knowingly or intentionally caused bodily harm to Fred Hattenberger *or that the defendant knowingly or intentionally made physical contact of an insulting or provoking nature with Fred Hattenberger;* and
>
> Secondly, . . . .

(emphasis added).

 We first must address Respondent's contention that Jenkins has procedurally defaulted on this claim by failing to include it in his petition for leave to appeal to the Illinois Supreme Court following his direct appeal. Respondent urges us to overrule our decision in *Hogan v. McBride*, 74 F.3d 144 (7th Cir. 1996), and to adopt a rule requiring habeas petitioners to seek discretionary review of their claims in the highest state court before presenting these claims in federal court. We decline to do so. In *Hogan*, we noted that "[f]orfeiture under § 2254 is a question of a state's internal law." *Id.* at 146. Under *Hogan*, if a state requires its litigants to present an issue to its Supreme Court, the failure to do so would result in forfeiture. However, if the state would not consider the issue waived because it was omitted from a petition for leave to appeal, and when the last state court to address the issue reaches its merits without invoking forfeiture, "the question is open on collateral review under § 2254." *Id.* In the present case, Respondent does not argue that the Illinois Supreme Court would have viewed Jenkins' aggravated battery claim as forfeited. Additionally, the Illinois Appellate Court addressed Jenkins' aggravated battery ineffective assis-

tance claim on its merits. *Jenkins,* 137 Ill. Dec. 225, 545 N.E.2d at 1002–03. Therefore, we may address Jenkins' claim on the merits.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court outlined the two-part test for ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S.Ct. 2052. In order to satisfy the first prong of the *Strickland* test, Jenkins must show that his counsel's performance fell below an objective standard of reasonableness governed by prevailing professional norms. *Id.* at 686, 104 S.Ct. 2052. Under the second prong, an error by counsel, even if unreasonable, does not warrant relief unless it affected the judgment. *Id.* at 691, 104 S.Ct. 2052.

■ Jenkins asserts that his trial counsel was ineffective in agreeing to instructions that enlarged the possible grounds for conviction on the aggravated battery claim. He claims that this enlargement constituted an impermissible "constructive amendment" of the indictment and violated his right to be tried on a charge actually made. *See Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *United States v. Leichtnam,* 948 F.2d 370, 379 (7th Cir.1991); *People v. Kincaid,* 87 Ill.2d 107, 57 Ill.Dec. 610, 429 N.E.2d 508, 515 (1981); *People v. Edwards,* 243 Ill.App.3d 280, 183 Ill.Dec. 548, 611 N.E.2d 1196, 1201 (1993).

While it is true that under Illinois law battery "consist[s] of either of two alternative types of misconduct," *Hale,* 32 Ill.Dec. 548, 395 N.E.2d at 930, the present case is distinguishable from the constructive amendment of the indictment cases. Jenkins was charged with aggravated battery for striking Officer Hattenberger. Jenkins was not con-

victed of a different offense, nor was his conviction based on an entirely separate uncharged set of facts. Illinois courts which have addressed similar variances between indictments and jury instructions have consistently held that such variances will not vitiate a conviction as long as the variance does not mislead the defendant in the presentation of his defense, does not expose him to double jeopardy, and as long as there was ample evidence presented to the jury to permit it to find the defendant guilty of the charged crime beyond a reasonable doubt. In *People v. McEvoy,* 33 Ill.App.3d 409, 337 N.E.2d 437 (1975), the defendant was charged with bodily harm battery. However, the trial judge instructed the jury only on insulting touching battery, stating that "a person commits battery who by any means knowingly or intentionally makes contact of an insulting or provoking nature with another person." *Id.* at 440. The court, citing *People v. Rosochacki,* 41 Ill.2d 483, 244 N.E.2d 136, 141 (1969), upheld McEvoy's conviction, stating that the variance in McEvoy's case did not mislead him in his defense and would not expose him to double jeopardy. *Id.* at 441.

Similarly, in *People v. Laramore,* 163 Ill. App.3d 783, 114 Ill.Dec. 246, 516 N.E.2d 401 (1987), the defendant was convicted of murder. The defendant was originally charged with three counts of murder, 720 ILCS 5/9–1(a)(1), (a)(2), and (a)(3). The counts under subsections (a)(1) and (a)(3) were nolle prossed by the state prior to trial, leaving only one charge under subsection (a)(2). *Id.* 516 N.E.2d at 405. However, the jury instructions allowed for conviction under both subsections (a)(1) and (a)(2). *Id.* The appellate court, citing *Rosochacki,* determined that Laramore was not denied a fair trial. He was charged with murder and was convicted of murder. The three subsections of 9–1(a) represent one crime, murder, and not three separate and distinct offenses. The variance did not affect the conviction because there were no allegations that the variance misled or hampered the defendant in preparing his defense. In fact, the court noted that Laramore's alibi defense would have been the same under any of the theories. Additionally, the challenged instruction did not

expose Laramore to double jeopardy. *Id.* at 406.

In *People v. Foster,* 103 Ill.App.3d 372, 59 Ill.Dec. 145, 431 N.E.2d 430 (1982), the defendant was charged with home invasion for "intentionally caus[ing] injury." Under Illinois law, home invasion can be committed either (1) by intentionally causing injury to a person or (2) by using or threatening the imminent use of force while armed with a dangerous weapon. *Id.* at 434. The judge's instructions to the jury included both theories. *Id.* at 433–34. The appellate court held that this was not error. It held that the jury was "over-instructed by also being partially instructed on the alternative means of committing the offense." *Id.* at 435. Since the variance did not mislead the defendant in his defense or expose him to double jeopardy and since there was ample evidence presented to the jury to permit it to find the defendant guilty of home invasion beyond a reasonable doubt, the conviction was affirmed. *Id. See also People v. Griffin,* 247 Ill.App.3d 1, 186 Ill.Dec. 610, 616 N.E.2d 1242, 1255 (1993) (holding that the fact that jury instructions included a nolle prossed alternative element of aggravated criminal sexual assault was harmless error because defendant was not misled in his defense and the evidence clearly supported the finding of guilt on the charged type of sexual assault); *People v. Pagliuca,* 119 Ill.App.3d 906, 76 Ill.Dec. 254, 458 N.E.2d 908, 913 (1983) ("The law in Illinois is that any variance between the offense specified in the indictment and the offense described in jury instructions does not vitiate a conviction unless the variance is of such a character as to mislead the defendants in their defense or expose them to double jeopardy."). *But see Veile,* 65 Ill. Dec. 357, 441 N.E.2d at 152 (rejecting the state's harmlessness argument, stating "[t]he defendant has a right to know specifically what she is being charged with," and noting that the evidence was insufficient to support the charged offense).

■ In the present case, Jenkins does not allege that the variance between the indictment and the jury instructions exposed him to double jeopardy or misled him in the presentation of his defense. Under either battery prong, Jenkins had the incentive to minimize his contacts with Hattenberger to the jury. In fact, he did so, denying that he instigated any contact at all with the officer and asserting that he had been the target of an unprovoked attack by the police. This defense applies to either type of aggravated battery. As long as Jenkins' conviction stands, he cannot be tried again for the same aggravated battery. Additionally, as the Illinois Appellate Court noted, the evidence is sufficient to support Jenkins' conviction for bodily harm aggravated battery. *See Jenkins,* 137 Ill.Dec. 225, 545 N.E.2d at 1003. Under Illinois law, a bruise is sufficient evidence of bodily harm to support a battery conviction. *People v. Mays,* 91 Ill.2d 251, 62 Ill.Dec. 945, 437 N.E.2d 633, 635–36 (1982). Hattenberger testified that the elbowing by Jenkins caused a bruise on his torso. On cross-examination, Hattenberger admitted that it was possible that the bruise could have been caused when he landed on top of Jenkins after the two fell to the ground. However, Hattenberger was quick to clarify that he felt pain in the torso area during that elbowing and not when he landed on top of Jenkins. Jenkins' aggravated battery ineffective assistance claim fails.

## III. CONCLUSION

We recognize that this case has some unique factual and legal considerations which might suggest a different result, but after a thorough review of the record and the applicable law, we believe the decision of the district court must be REVERSED. The case is, therefore, REMANDED with instructions to enter an order denying the petition for writ of habeas corpus.